## Joseph Nusbaum and John Bowes, *vs.* Myer Stein, and others.

Granting an injunction is a matter resting in the sound discretion of a court of equity, and such a power should be exercised with extreme caution, and to warrant its action, strong *prima facie* evidence of the facts on which the complainant's equity rests, must be presented to the court.

Where the claim is on a written instrument in the complainant's possession, it should be exhibited with the bill, or a satisfactory reason assigned for its non-production, and a bill stating the complainant's claim to be founded on promissory notes, none of which are exhibited, and no reason or excuse given therefor, will not warrant the granting of an injunction, though the bill be sworn to.

Where the only claim on which the complainant can ask for an injunction, is a small sum on open account, of which no account is produced verified by affidavit, and the allegations of the bill show the defendant to be possessed of a large sum over and above the mortgages and conveyances attacked by the bill, a preliminary injunction should not be granted to affect the property embraced in such conveyances.

A receiver ought not to be appointed without previous notice of the application given to the defendant, unless the necessity be of the most *stringent character*.

Appeal from the Circuit Court for Baltimore city.

This appeal was taken by the appellants, after answers filed, from an order of the court below (Krebs, J.,) granting an injunction and appointing a receiver, upon a bill filed against them by the appellees. The allegations of the bill are fully stated in the opinion of this court.

The cause was argued before Le Grand, C. J., Eccleston and Bartol, J.

*F. W. Brune* for the appellants:

1st. The complainants were not entitled to the appointment of a receiver nor to an injunction, because they are merely general creditors of Nusbaum, and have not prosecuted their claim to judgment and execution, nor in any other manner acquired a lien upon the appellants' property. 10 *Md. Rep.*, 500, *Uhl vs. Dillon.* 11 *Md. Rep.*, 365, *Blondheim vs.*

Nusbaum & Bowes, *vs.* Stein, *et al.*

*Moore. Ibid.*, 452, *Triebert vs. Burgess.* 2 *Johns. Ch. Rep.*, 144, *Wiggins vs. Armstrong.*

2nd. The bill of sale from Nusbaum to Bowes, was executed by the former, and was acknowledged and recorded according to law, and the consideration was sworn to by the latter. Being thus executed and sustained by affidavit, it furnishes at least *prima facie* evidence that the consideration was just and *bona fide,* as stated in it. In opposition to this, the complainants furnished no proof whatever, except the oath *ex-parte* of Stein, one of the complainants, which does not positively state the facts sworn to, but only to the best of his knowledge and *belief.* Such an affidavit, unsupported by any other evidence, is wholly insufficient to counteract the positive statement made in the bill of sale, and the order of the court was, therefore, passed on proof entirely insufficient. Almost the entire claim of the complainants is founded upon *promissory notes*, none of which are produced, and no excuse given for their non-production; and as to the small balance on open account, even that is unsupported by any *affidavit* or other *proof.* That the court, upon *such proof*, ought not to have granted the injunction, is fully sustained by the case of *The Union Bank vs. Poultney*, 8 *G. & J.*, 332. That the allegations of the bill do not make a case authorizing an injunction, and, above all, the appointment of a receiver, see *Adams Eq.*, 487, *(n;)* 1 *Paige*, 98, *New York Printing Co. vs. Fitch;* 9 *G. & J.*, 468, *Amelung vs. Seekamp;* 4 *Gill*, 34, *Hamilton vs. Ely;* 1 *Md. Rep.*, 543, *White vs. Flannigain;* 2 *Green's Ch. Rep.*, 422, *Vanwinkle vs. Curtis;* 1 *Clarke*, 336, *Rochester vs. Curtiss.*

3rd. An additional objection to the exercise of the power exerted by the court in this case, in granting an injunction and appointing a receiver, arises from the fact that the stock of goods thus summarily taken possession of, was in Easton, and the business enjoined there carried on out of the jurisdiction of the court. 5 *Sandf.*, 613, *Grant vs. Quick.*

*Orville Horwitz* and *Chas. H. Pitts* for the appellees:

1st. Under the act of 1835, ch. 380, sec. 2, as construed in the case of *Sanderson vs. Stockdale*, 11 *Md. Rep.*, 563, it

was not necessary for the complainants to have prosecuted their claim to judgment, or to have acquired any *lien* on the property before proceeding in equity to vacate these conveyances.

2nd. The allegations of the bill make a sufficient case for the interference of the court, by way of injunction and a receiver. It alleges that Bowes was not possessed of any *property or means* at the time these conveyances were executed; that *no consideration* was given therefor; and that the deeds were made by the one and accepted by the other *without consideration*, and with the *intent to defraud creditors;* that, in effect, there was a *conspiracy to defraud.* These allegations need no other proof than the sufficient oath of the complainants, and, according to the case of *Triebert vs. Burgess*, 11 *Md. Rep.*, 452, such an affidavit as that in this case, "that the facts stated in the bill are true, according to the best of complainant's *knowledge and belief*," was held sufficient. There was also sufficient proof of the existence of the claim. But even if the non-production of the notes is an objection, still the bill alleges a portion of the debt to be due upon *open account*, and this was sufficient to warrant the action of the court, for if any part of the claim authorized the court to issue the order, the fact that there was another part secured by notes, could not deprive the complainants of the rights they had, under the allegation, for the *open account debt.* The court, then, having the right to interfere for the complainants' protection, how could it be done except by an injunction and a receiver? The goods were distant, and the defendants had no other means to pay our claim, and were about to dispose of the property. This is the very case contemplated in the decision in *Triebert vs. Burgess.*

3rd. The fact that the goods were at Easton, can make no difference. The case cited from 5 *Sandford*, only says you cannot interfere to stop the action of another court; but here there was no other proceeding at Easton with which this could interfere.

ECCLESTON, J., delivered the opinion of this court.

The bill in this case was filed in the circuit court for the city of Baltimore, on the 15th of December 1857, by Myer Stein

and others, complainants, against Joseph Nusbaum and John Bowes, defendants; upon which day the court ordered an injunction and appointed a receiver. From this order, after filing their answers, the defendants appealed.

It is well settled, "that the granting or refusing of injunctions is a matter resting in the sound discretion of a court of equity." 2 *Story's Eq.*, *secs.* 863, 959, *(a.)* This learned author, in *sec.* 959, *(b,)* maintains the necessity for upholding the authority of the courts to grant injunctions in a variety of cases, for the purposes of social justice. But he then says: "At the same time, it must be admitted that the exercise of it is attended with no small danger, both from its summary nature and its liability to abuse. It ought, therefore, to be guarded with extreme caution, and applied only in very clear cases; otherwise, instead of becoming an instrument to promote the public as well as private welfare, it may become a means of extensive, and, perhaps, of irreparable injustice." See the authorities referred to in the note to this section, including a quotation from Mr. Justice Baldwin's decision, in *Bonaparte vs. Camden & Amboy Rail Road Co.*, in which he says: "There is no power, the exercise of which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing an injunction." See, also, *N. Y. Printing & Dying Establishment vs. Fitch*, 1 *Paige's Ch. Rep.*, 98.

In the case of the *Union Bank of Maryland vs. Ann Poultney & J. M. Ellicott*, 8 *G. & J.*, 332, an appeal was taken from an order granting an injunction. The appellate tribunal held, that the complainants, by their bill, had not shown themselves entitled "to the high and extraordinary power of a court of equity, which had been exerted in their behalf." And that there was "no such evidence of their alleged claims as ought to have been produced to satisfy the conscience of a court of chancery of their existence." The bill stated the claims to be certificates of deposit, but they were not produced as exhibits. The court said: "To warrant a court of chancery in issuing an injunction, strong *prima facie* evidence of the facts on which the complainants' equity rests, must be pre-

sented to the court, to induce its action. In such a proceeding, the mere oath of the party as to the existence of a debt, of which he holds in his possession the written evidence, and makes no exhibition thereof, should not be regarded by the chancellor as any proof of the debt. Where the existence of the debt depends on a written instrument, whereof the complainant is presumed to be possessed, it should be exhibited with the bill, or a satisfactory reason assigned for its nonproduction.''

In the present case, the complainants allege Nusbaum to be indebted to them in the sum of $2045.12, of which $134.02 is charged as being due on open account, for merchandize sold and delivered to him, and the balance is stated to be due on four promissory notes; but not one of them has been exhibited, nor has any reason or excuse been assigned for such failure to produce them. And, according to the doctrine held in the case last referred to, these notes cannot be regarded as any proof of indebtedness on the part of Nusbaum. They must, therefore, be considered as if they were not before us; thus leaving the complainants with no further claim than that of $134.02, on open account, on which they can base any title to an injunction.

The bill states, that on the 28th of October 1857, Nusbaum was the owner of, and carried on, four stores, one in the city of Baltimore, one in Norfolk in the State of Virginia, one in the State of Ohio, and one in the town of Easton in Talbot county in Maryland. That the goods and merchandize then in said stores were worth, in the aggregate, about $20,000. That on the 5th of November 1857, the said Nusbaum conveyed, by way of mortgage, to A. Brown Davidson, to secure to him the payment of $5396.72, his, the said Nusbaum's, stock of goods in the city of Baltimore, and, on the 21st day of the same month, (November,) Nusbaum conveyed, by way of mortgage, the same stock of goods to Orem & Hopkins, to secure to them the payment of the sum of $2567.25, as appears by copies of said mortgages filed as exhibits. That on the said 5th of November, Nusbaum conveyed and transferred to said Davidson all his, Nusbaum's, stock of goods in the

the State of Ohio, as a further security for his debt to David-son.   That the conveyances to Davidson, and Orem & Hop-kins, the complainants do not mean to impeach in this suit, but refer to them as necessary to a full disclosure of their case. The bill further states, that on the 10th of November 1857, Nusbaum received from Moses Herz and J. K. Hubard, of Norfolk, in Virginia, a conveyance of a stock of goods then contained in store No. 14, in the said town of Norfolk, to secure to said Nusbaum the payment to him of the sum of $3970.50, as appears by a copy of said conveyance filed and marked C, which stock of goods is one of the four before mentioned, the same having been previously sold by Nusbaum to Herz.   The complainants also allege, that on the 13th of November 1857, the said Nusbaum conveyed, by way of mort-gage, all his stock of goods in the town of Easton, aforesaid, to John Bowes, of the city of Baltimore, to secure a pretended indebtedness by said Nusbaum to said Bowes, of $3100, and on the 16th day of said month of November, Nusbaum, by absolute bill of sale, conveyed to the said Bowes, in satisfac-tion of another pretended indebtedness to him of $2950, all his, the said Nusbaum's interest in the stock of goods which had been conveyed to him, as aforesaid, by Herz & Hubard, as appears by a copy of said conveyance from Nusbaum to Bowes, filed and marked D.   The two conveyances to Bowes the complainants say they believe and charge were made by Nusbaum and accepted by Bowes without consideration and fraudulently, and for the purpose of hindering, and delaying, and defrauding the complainants, who were at the date of said deeds, and still are, creditors of the said Nusbaum.    The bill also alleges, that Nusbaum "has no property or assets of any kind, other than that which he has conveyed and mortgaged, as hereinbefore stated."

The complainants pray that the two deeds or conveyances to Bowes may be declared void.   And in regard to the stock of goods included in the first of them, the further prayer of the bill is, that a writ of injunction might be issued, and a receiver appointed; which last mentioned prayer the court granted.

The question before us, it will be seen, is not whether, upon final hearing, the first conveyance to Bowes should be declared void, and perpetually enjoined, or whether, after the filing of an answer, and upon a motion to dissolve the injunction, the motion should or should not prevail, but it is whether, upon the case made by the bill, a preliminary injunction should have been issued, and a receiver appointed? To such a question, in view of the *caution* and *sound discretion* proper to be exercised, we must say we think the circumstances disclosed by the bill did not justify the order passed by the court, from which this appeal is taken.

We have said the promissory notes claimed by the complainants to be due them, are not evidence in support of the injunction. Their only claim, therefore, requiring examination, is that stated in the bill to be $134.02, on open account; the proof of which rests alone upon the affidavit of one of the complainants, swearing to the truth of the statements and averments of the bill. No account is produced, verified or sustained, either in the whole or in part, by the oath of a clerk, which species of proof it cannot be very difficult to furnish in a regular city mercantile establishment. And when the propriety of granting the injunction is based upon a claim having no more proof than is here given, it is a circumstance not to be entirely disregarded, that Bowes, the mortgagee, whose rights are to be seriously affected by the injunction, has made oath that the consideration in the mortgage "is true and *bona fide*, as therein set forth."

The statement in the bill is, that on the 28th of October 1857, Nusbaum was the owner of, and carried on, the four stores which have been mentioned, and that the goods and merchandize then in those stores were worth, in the aggregate, about $20,000. Now, excluding the four promissory notes claimed by the appellees, if their open account and all the mortgages mentioned in the bill, and also the consideration for the absolute bill of sale to Bowes, are all added together, they will amount to the aggregate sum of $14,148.09. Deduct this from the $20,000, and there will remain a balance of assets, belonging to Nusbaum, amounting to $5841.91. The

four promissory notes amount to $1911.10.   If this should be taken from the above stated balance, there would still be $3940.81 of Nusbaum's assets, after allowing every claim against him, mentioned in the bill.

In *Triebert vs. Burgess, et al.,* 11 *Md. Rep.,* 461, an order appointing a receiver was reversed, because previous notice to the defendants had not been given.   The day on which the present bill was filed, the receiver was appointed, no previous notice of the application having been given to the defendants; for which reason there will be a reversal of the appointment. And believing the bill does not make a proper case for an injunction, the order of the 15th of December 1857, granting the same, must be reversed.

<div align="right">

*Order reversed and cause remanded.*