## ALFRED FOWBLE, TREASURER AND COLLECTOR, ET AL, *vs.* SIMON J. KEMP, ET AL.

*Taxation of Distilled Spirits—Appeal to County Commissioners from Assessment by State Tax Commissioners Prior to Act of 1900, ch. 320—Procedure to Collect Tax Due by Warehouseman Upon Spirits Owned by Other Persons—Sufficiency of Affidavit to Bill for Injunction.*

The Act of 1892, ch. 704 (Code, Supplement, Art. 81, secs. 204-214), authorizes the State Tax Commissioner to assess for taxation distilled spirits, reporting the assessment to the local taxing authorities. The Act of 1898, ch. 275, provides that there shall always be an appeal to the Board of County Commissioners from the acts of all assessors or agents appointed by them, or others authorized to act as assessors under the laws of the State, *Held.*

1st. That although the Act of 1892, itself contained no provision giving to the person charged with an assessment for distilled spirits an opportunity to be heard as to the valuation, yet an assessment under that Act (before the amendment by the Act of 1900, ch. 320) was valid in the counties of the State, because the Act of 1898, afforded a right of appeal by virtue of which the person charged could be heard before the taxes were levied.

2nd. That since the Act of 1896, ch. 120, while providing for a general assessment of property, also enacted that nothing therein contained should affect the Act of 1892, relating to the taxation of distilled spirits, the Act of 1898, remained applicable to appeals from such assessments.

The Act of 1892, ch. 704, requires every distiller and warehouseman having custody of distilled spirits to pay the taxes thereon, although the same be owned by third parties, reserving to such distiller a lien for the payments. *Held*, that since the distiller is the agent of the State to collect such taxes, the tax collector is not authorized to enforce payment thereof by distraint upon the property of the distiller himself, but the remedy is by action at law against him upon his statutory obligation to pay the taxes.

To warrant the Court in granting an injunction, the averments of the bill should be established by such *prima facie* evidence as to obtain the confidence of the Court. Consequently, upon an *ex parte* application, the affidavit to the bill should be made by some one who is acquainted with the facts set forth. When the affidavit is not made by a party to the cause, unless his means of knowing the facts be disclosed, a Court has no right to assume that his knowledge is personal rather than hearsay, if it may be either the one or the other.

A bill asked for an injunction to restrain the collection by distraint of taxes assessed against a distiller. The single fact that would justify the granting of the injunction, on the case as made, was that the tax was levied on spirits not owned by the distiller but by others. The affidavit to the bill was as follows: "Sworn to by M. W. O., attorney and agent for the company." *Held*, that since the affidavit was not made by a party to the cause and does not show that the affiant had personal knowledge of the facts alleged in the bill, it is insufficient as a foundation for the granting of an injunction.

Appeal from an order of the Circuit Court for Baltimore County (BURKE J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER JJ.

*D. G. McIntosh* (with whom was *W. Gill Smith* on the brief), for the appellant.

*Frank Gosnell* and *T. Scott Offutt* (with whom was *M. W. Offutt* on the brief), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court:

There are three questions raised by the record in this case. The *first* is whether the statute under which certain taxes levied by the County Commissioners of Baltimore County upon the appellees as the owners or custodians of distilled spirits, which either belonged to or were in the possession of the appellees, is valid and constitutional. The *second* is whether the method of procedure resorted to by the collector of taxes to enforce payment, is proper. And the *third* is whether the bill of complaint filed by the appellees and praying that the collection of those taxes be restrained by injunction is sufficiently verified to justify the granting of an injunction.

The taxes were levied under the *Act of 1892, ch. 704,* now, *secs. 204 to 214 of Art. 81 of the Supplement to the Code.* This same statute was before this Court for construction in the recent case of *Monticello Co. v. Baltimore City,* 90 Md. 416. That case arose in Baltimore City. Because the *Act of 1892* contained no provision giving to the person charged with the duty to pay the tax an opportunity to be heard as to the valuation of the spirits before the taxes were levied; and because the local law of Baltimore City afforded no appeal to any tribunal from the *ex parte* assessment made by the State Tax Commissioner, we held the Act of 1892 to be in this particular unconstitutional; but we added that the objection to its validity could be removed by appropriate legislation. This has been done by the *Act of 1900, ch. 320,* but its provisions are not applicable to the case at bar because the taxes here involved were levied before the Act of 1900 was adopted. The fundamental principal lying at the root of every judicial or executive procedure and affording a person affected an opportunity to be heard at some stage of the proceedings before a liability can be fastened upon him and before his property can be seized and sold under legal process for any purpose, was, and had long before been, distinctly recognized as appli-

cable to assessments for taxation. It was not merely because the *Act of 1892* itself contained no provision giving the tax payer a day to be heard that it was declared invalid, but because the omission was not supplied by any other local legislation. Had there been some local law of Baltimore City which gave a right of appeal from the valuation made by the State Tax Commissioner to the Appeal Tax Court or to some other tribunal, the result of the *Monticello case* would have been different. This being so we must now ascertain whether there was in force when the taxes here involved were levied, any local law of Baltimore County or any general law applicable to that county, under which the tax payer did have his day to·be heard. The *Act of 1898, ch. 275,* contains in *sec. 192A,* the following clause : "There shall always be an appeal to .the Board of County Commissioners from the acts of all assessors or agents appointed by them hereunder, *or others authorized to act as assessors under the laws of this State.*" This statute was relied on in the *Monticello case,* but we said in respect to it : "Whatever its scope, it, in explicit terms, is confined to the County Commissioners and has no relation to the Appeal Tax Court of Baltimore City." The only thing decided in *90th Md.* in relation to the Act of *1898* was that it did not apply to Baltimore City. Does it apply in Baltimore County to valuations made by the State Tax Commissioner upon distilled spirits located in that county ?

Obviously, its words are broad enough to make it applicable. The right of appeal to the County Commissioners is given by this statute, not only from the acts of all assessors or agents appointed by them, but from the acts, and therefore from the valuations ·of *others* authorized to act as assessors under the laws of this State. Now, the State Tax Commissioner is in terms, express and unequivocal, authorized under the statute of 1892 to act as an assessor of distilled spirits, and no one else is authorized to value that class of property at all. He and he only is made the assessor to value it. He is not an assessor or an agent appointed by the County Commissioners, but he is clearly one of the *"others,"* that is to say, one of the

officers not appointed by the County Commissioners, but still authorized by law to act as an assessor. If he be authorized under the laws of this State to value particular property situated in Baltimore County, and if no one else have authority in the first instance to value that same property, he is manifestly clothed with the powers of an assessor, and why may no appeal be taken from his valuation to the County Commissioners, when appeals to them are permitted from the acts and consequently from the valuations of assessors and agents appointed by them, and from the acts and consequently from the valuations of all others authorized to act as assessors under the law? The word " others " is not restricted or qualified and must be taken as including *all* other persons authorized to act as assessors, and hence the plain meaning of the provision is that an appeal will lie to the County Commissioners from the valuations made by assessors and agents appointed by the County Commissioners, and from the valuations made by all other persons authorized to act as assessors, unless, of course, in special instances a different method of proceeding or an appeal to a different tribunal be prescribed. But between the adoption of the *Act of 1898* and the passage of the *Act of 1900* a different method of proceeding did not prevail, or an appeal did not lie to a different tribunal in Baltimore County.

It is suggested that the proviso to *sec. 2, Art. 81 of the Supplement to the Code*, as that section was enacted by the *Act of 1896, ch. 120 and ch. 143*, prevents the *Act of 1898, ch. 275*, from applying to the distilled spirits in question. The proviso, as contained in the *Act of 1896, ch. 120*, is in these words : "Provided nothing contained in this section or Act shall repeal, modify or affect *sec. 86 and 86A* of this Article, relating to taxation of savings banks, or the *Act of 1892, ch. 704*, relating to the taxation of distilled spirits." The object of the proviso was to save from repeal or modification certain enactments relating to savings banks and the entire *Act of 1892* relating to the valuation of distilled spirits for purposes of taxation. When the section to which this proviso is appended is examined, it will be found that it has reference to the assessment and valuation of

property for taxation. It declares what property shall be valued and assessed and defines *how* the valuation and assessment shall be made. When the proviso was added its effect was simply to prescribe that the method fixed by the *Act of 1892* for valuing distilled spirits should not be disturbed by anything contained in the general assessment law of 1896. If the proviso had been written out more at large it would have declared that, notwithstanding provision was made in the Act of 1896 for assessing all property in the State in the mode and manner designated in the Act of 1896, distilled spirits should nevertheless be assessed, not by local assessors, nor under any of the machinery created by the general assessment law, but by the State Tax Commissioner conformably to the terms of the *Act of 1892.* So the sole office of the proviso was to preserve the antecedently established method of valuing distilled spirits. That method still obtains. Then came the *Act of 1898, ch. 275,* which gave the right of appeal from the valuation to the County Commissioners. That Act conferred a right which did not exist before, viz., a right of appeal, and conferred it in terms broad enough to cover an assessment made by the State Tax Commissioner. Whilst the method of making the assessment under the *Act of 1892* was preserved by the *Act of 1896,* the *Act of 1898,* not touching that method or any other method of valuation at all, gave a new and distinct right, the right of appeal from the valuation when made. The things dealt with were different. The *Act of 1892* and the *Act of 1896* were concerned with assessments. The *Act of 1898* has relation to appeals from assessments. Nothing, therefore, contained in the proviso quoted from the *Act of 1896* can be projected into the *Act of 1898,* so as to preclude the latter Act from embracing appeals from valuations of distilled spirits.

There is nothing in the case of *Graham* v. *Harford County,* 87 Md. 321, at variance or in conflict with the views thus far expressed. The case just alluded to arose in this way: Under the general assessment law it is the duty of the State Tax Commissioner to apportion and divide amongst the

counties through which a railroad runs, the total valuation of its rolling stock according to the mileage of roadbed in each of such counties. The State Tax Commissioner is then required to transmit to the County Commissioners the apportionment so made by him, and upon that valuation and apportionment the taxes are to be levied "subject to the right of appeal as in other cases in this article." The rolling stock of the Philadelphia, Wilmington and Baltimore Railway Company was valued and the apportionment was made. From this apportionment the railway company entered an appeal to the Comptroller of the State Treasury and the Treasurer. Thereupon the County Commissioners of Harford County filed a bill in equity and sought an injunction to restrain the Comptroller and Treasurer from hearing the appeal. This Court dismissed the bill and held that an appeal could be taken to the Comptroller and Treasurer from the apportionment made by the State Tax Commissioner, because the terms of the statute authorized such an appeal. In the course of the opinion and for the purpose of showing what the words "subject to the right of appeal as in other cases in this article" meant, this language was used: "There is no appeal allowed from the State Tax Commissioner in any instance, to any tribunal other than to the Comptroller and Treasurer. Consequently when the *199th section of ch. 140 Acts of 1896* permitted an appeal from the State Tax Commissioner on the apportionment of the total valuation of rolling stock, and permitted that appeal to be taken 'as in other cases in this article,' it authorized an appeal to the same tribunal to which other appeals were given from him by antecedent sections of *Art. 81;* and that tribunal is the one composed of the Comptroller and Treasurer as there is no other to which an appeal from the State Tax Commissioner will lie." The opinion in which this statement occurs was filed on March third, eighteen hundred and ninety-eight, more than a month before the *Act of 1898, ch. 275,* was adopted, for the *Act of 1898* was adopted on April the ninth of the year just named. As the *Act of 1898* was not in exist-

ence when the case of *Graham* v. *Harford Co.* was decided there was no law on the statute-book at the date of that decision permitting an appeal from the State Tax Commissioner to any other tribunal than that composed of the Comptroller and Treasurer.  Since the adoption of the *Act of 1898* it cannot be said that there was no appeal from the State Tax Commissioner to any other tribunal than that composed of the Comptroller and Treasurer, because there was under the *Act of 1898* an appeal from him to the County Commissioners, though the *Act of 1900, ch. 320*, must be treated as superseding that appeal, for it makes specific and definite provision for an appeal from his valuation of distilled spirits to the Comptroller and the Treasurer, just as in the case of the valuation of shares of stock in corporations.

We hold, then, on the first inquiry that the assessment of distilled spirits involved in this case was valid because by the *Act of 1898* a right of appeal existed in virtue of which the appellees were accorded an opportunity to be heard before the taxes were levied ; and that this relieved the *Act of 1892* of the objection which compelled the assessment complained of in the *Monticello case* to be stricken down.

Now, as to the second inquiry, which is the one that relates to the method of procedure adopted by the tax collector.  It is claimed by the appellees that by far the larger part of the distilled spirits belonged to other persons and was not owned by the appellees.  Conceding that to be the fact still the appellees are made liable for the tax by the explicit terms of the *Act of 1892.* This was decided in the *Monticello case.* We there said : "As the distiller or the warehouseman is the individual through and from whom the title passes to others by means of certificates which he, and he alone, issues, it is no hardship to require him to pay the tax upon all spirits in his possession, reserving to him a lien for his advances ; nor is it an unreasonable or an unlawful legislative requirement * * * The requirement that the distiller shall pay the tax for the owner is neither unreasonable nor unlawful because it simply makes him the agent of the State to collect for the

State, precisely as a corporation is made an agent to collect from its stockholders the tax due by them on the stock which they hold. The legislation of 1892, with respect to distilled spirits is, in this particular, identical with the provisions of the Code relating to the tax on shares of stock and these latter have been upheld by this Court as valid enactments." But the liability of the appellees to pay the tax due by other owners of the distilled spirits is a liability unlike that which they are under to pay taxes on the spirits which they own. In the one case their liability is that of a collector for the State ; in the other it is that of owner. An owner of property holds it subject to the right of the State to seize it upon summary process for the non-payment of taxes. As collector for the State the same person is not liable to have his own property seized under the same process for the non-payment of taxes not actually due by him at all. This has been expressly ruled in *Hull* v. *Southern Dev. Co.*, 89 Md. 8. In speaking of the liability of a corporation to pay the tax assessed against its shareholders, it was said in the case just named: "The sole liability of the corporation grows out of the statutory duty to collect, and not out of its failure to pay a tax primarily due by it. The corporation owes the money to the county not as taxpayer, but as tax collector, and the prescribed process against the one is not available against the other." The prescribed process to which we alluded was the process by distress; So far, then, as the appellant undertook by distraining property owned by the appellees to enforce the payment of the taxes due by other owners of the distilled spirits though the taxes were payable by the appellees under the statutory obligation, the proceeding was unwarranted. The appellant should have brought suit in a Court of law upon the statutory obligation and when a judgment was recovered execution could be issued and any property owned by the appellees could be levied on and sold. What has been said on this branch of the case has no relation to the right of distress expressly given under *secs. 5 and 7* of the *Act of 1892 ;* but the proceedings taken by the tax collector *in this case* were not taken under those sections.

We come now to the third and last question.   The affidavit to the bill of complaint is in these words :   "Sworn to by M. W. Offutt, attorney and agent for the company, before me, the subscriber, this eleventh day of September, 1900, Joseph B. Herbert, J. P."

The general rule with regard to the verification of a bill of complaint praying for an injunction is thus stated in *Union Bank* v. *Poultney*, 8 G. & J. 332; *Nusbaum* v. *Stein*, 12 Md. 318; *Mahaney* v. *Lazier*, 16 Md. 73 : "To warrant a Court of equity in issuing an injunction, strong *prima facie* evidence of the facts on which the complainant's equity rests must be presented to the Court to induce its action."   This *prima facie* evidence may consist of the oath of the plaintiff or of a third party if he knows the facts, or of documentary evidence. Such verification of the averments of the bill is required in addition to the sufficiency of the allegations, so that the confidence of the Court may be obtained.   Usually the affidavit is made by the plaintiff, *Salmon* v. *Clagett*, 3 Bland, 125; but by whomsoever made it should be made by some one who is acquainted with the facts.   When the bill is filed by a corporation an officer thereof or other person who has personal knowledge of the facts should swear to them.   *Youngblood* v. *Schamp*, 15 N. J. Eq. 42.   The verification must extend to all the material facts upon which a right to the injunction rests and must be direct and positive.   Thus in *Davis* v. *Leo*, 6 Ves. Jr., 784, Lord Eldon said : "I dare not grant an injunction in this case.   The bill states a title sufficiently, if it was duly verified.   But the affidavits disclose the case no farther than that it may or may not be true ; and I am of opinion the Court ought not to grant an injunction unless there is positive evidence of actual title."   Whilst in *Triebert* v. *Burgess*, 11 Md. 452, the allegations of the bill were stated in the usual manner of averring facts as based on the knowledge of the plaintiff and were sworn to by him as being true "to the best of his knowledge and belief," and the affidavit was held to be sufficient ; still the Court cited *Coale* v. *Chase*, 1 Bl. 137, where the *form* of an affidavit to an answer though held sufficient,

was criticised by the Chancellor, who admitted that regularly the affidavit should in such cases assert "that the facts within the defendant's own knowledge are true and that those facts not within his own knowledge he believes to be true." When the affidavit is made by a third party if any material allegation or charge in the bill which is necessary to be sworn to positively is not within the personal knowledge of the agent or attorney who verifies the bill, he should in addition to his own verification annex to the bill an affidavit of the person from whom he derived his information. *10 Ency. Pl. & Pr. 970, and cases in note 5.*

Now, the affidavit to the bill of complaint in this case was made by the attorney of the appellee. It does not show on its face that he had the means of knowing, in a way that would enable him to testify as a witness the facts which are averred. The single fact that would have justified the granting of the injunction was that the tax was due not by the appellees as owners of the spirits, but that it was due by others. This fact, whilst not relieving the appellees from liability for the tax in an action at law, would exempt their property from being seized and sold under a summary distress. But whether the spirits were owned by the appellees or by third parties, was not a fact of which the counsel can be presumed to have personal knowledge, and the affidavit does not say that he had such knowledge. If the affidavit had stated that the facts alleged were within his personal knowledge that would have been sufficient. When the affidavit on its face shows, as this one does, that it is made not by a party to the cause, but by a person who could not know the facts except by hearsay, unless his means of knowing them in such a way as to authorize him to testify be disclosed, a Court has no right to assume that his knowledge is personal rather than hearsay, if it may be either the one or the other. If it be hearsay it is not sufficient to verify a bill for an injunction. If his knowledge be personal it ought to appear that it is. It does not so appear. There is consequently an insufficient affidavit to support the allegations of the bill and the injunction

should not have been issued.   Indeed there is no pretence that any fact alleged in the bill was personally known to the affiant; that is, there is no pretence of this on the face of the affidavit.   The affidavit does not fulfill any of the requirements of a sufficient affidavit and furnished no foundation for issuing an injunction.

The results of the views herein expressed are, *first*, that the tax levied upon the appellees is valid ; *secondly*, that as to such part of the tax as the appellees are liable for in behalf of other persons, a suit at law and not a distress is the remedy; and *thirdly*, that the bill for an injunction not having been properly verified, the injunction should not have issued. As a consequence, the order granting the injunction will be reversed and the bill will be dismissed without prejudice.

> *Order reversed without prejudice, but*
> *with costs above and below.*

(Decided February 8th, 1901.)

PAGE, J., dissented and delivered the following opinion :

I concur in the judgment rendered by this Court, but I cannot agree with it, as to the effect of the Act of 1898, ch. 275, sec. 192A.   I do not think that section amends or in any manner modifies sections 204 to 213 of Article 81 of the Code, relating to the taxation of distilled spirits.   Those sections were adopted in 1892, (ch. 704.)   At that date and ever since there was and has been a general system for the assessment of property in the State ; and by that a valuation of property was first made by assessors specially appointed for this purpose ; and thereafter, every collector of taxes in the State was charged with the duty of valuing property omitted, and also all property thereafter created and acquired. There were also special methods of assessment of certain kinds of property ; such as the property of banks and other incorporated institutions ; and where real estate became subject to the collateral inheritance tax, the Orphans' Court appointed persons (called appraisers) to make the valuation.

The State Tax Commissioner was invested with the power

of assessment of shares of capital stock in all incorporated
institutions. In all these cases and perhaps others, the
County Commissioners at one time had no authority to make
assessments, but they did have the general power to correct
assessments and supply omissions in former assessments.
The Act of 1896, ch. 120, amended the laws relating to reve-
nue and taxes (being Article 81 of the Code) in many
respects, but left unchanged the general plan of assessments,
as well as the special methods of procedure in certain specified
cases. By this Act there was provided a general plan of
assessment for property not peculiarly situated, and special
methods for assessing such kinds as could not otherwise be
efficiently reached. The duty of the collector of taxes to
inform himself of all property omitted from former assess-
ments and of property created and acquired since the last
assessment was unchanged : and the special plans for reach-
ing other property were also retained, though amended in
certain details. The Act of 1896, however, materially
enlarged the power of the County Commissioners. By sec.
192 of that Act they were empowered to biennially value and
assess "all personal property." Prior thereto their power was
annually to make increases in the valuation of property which
had enhanced in value or had been improperly assessed, and,
also, they could add such as had been omitted in former
assessments. In 1898, by chapter 275, their powers were
still further enlarged. By that Act it was provided that in
addition to the powers already vested in them by law, they
should have power to value and assess and correct the
assessment of all property real and personal and "take steps
for the discovery of all unassessed property of every kind."
A particular mode of procedure was laid down for them to
pursue, and they were authorized to appoint such "agents"
as they deemed necessary to enable them to discharge the
powers granted to them under Article 81 of the Code. In
view of this brief statement it seems clear to me that by the
appeal authorized by the section 192A (that being a section
of the Act of 1898, ch. 275), it was not intended to interfere,

modify or change any of the sections of Article 81, which provided special methods of reaching the valuation of special kinds of property, as, for instance, stock of corporations or distilled spirits. The provision in 192A is that "there shall always be an appeal to the Board of County Commissioners from the acts of all assessors or agents appointed by them thereunder or others authorized to act as assessors under the laws of this State." There are a number of persons authorized in special cases to act as assessors, as an inspection of Article 81 will show, viz. : collectors of taxes, appraisers of the Orphans' Court, such assessors as may be appointed under the 155th section, the Tax Commissioner and such other assessors and agents as may be appointed under section 192A.

The Act of 1892, ch. 704 (being sections 204 to 213 inclusive), provides a special method for ascertaining the valuation of distilled spirits by the Tax Commissioner. The valuation he may make he is to return to the Board of County Commissioners ; and it is upon that valuation, so made and returned, that the tax is to be levied by the County Commissioners. It would seem to be an anomaly to hold, that despite this clear duty of the County Commissioners, to make their levy upon the valuation made by the Tax Commissioner, that the commissioners should still have power on appeal, to alter and change that valuation at pleasure. And this, too, when the section 192A makes no allusion, directly nor indirectly, to distilled liquors, nor to the method of valuing them for purposes of taxation ; and also in the face of the provision of the third section of the Article, that nothing contained in the section (or Article as appears in the Code) " shall repeal, modify or affect sections 204 to 213 inclusive, relating to the taxation of distilled spirits." If the words of section 192A, viz., "others authorized to act as assessors under the laws of this State" be not taken with some qualification, why does it not give an appeal to the County Commissioners from the acts of all persons who may act as assessors ? Why not from the Tax Commissioner ? The fact that he acts only in special cases and that another appeal is then granted would not meet the question,

because the section 192A being later in time, would repeal every provision of law inconsistent therewith. The theory of the law applicable to distilled spirits to my mind negatives the intent that section 192A was intended to afford an appeal from the valuation made by the Tax Commissioner. The argument that it does apply to distilled liquors has no more force than to the valuation of bank stock. To give section 192A such a construction would be to repeal those provisions which require the County Commissioners to levy the tax on distilled spirits upon the valuation made by the Tax Commissioner. Can that be done? Repeals by implication are not favored, and if the two Acts can stand together by construction, that ought to be adopted which will sustain both, *Garitee* v. *Baltimore City*, 53 Md. 435.

It is the intention of the Legislature that must be sought for and carried out. By the most latitudinarian construction of 192A can it be taken to mean that the purpose of the Legislature was, that those general words should work a radical alteration in the scheme of taxing spirits? If that could be so held, what was the necessity for the Act of 1900, ch. 320, which allows an appeal from the action of the Tax Commissioner in such cases. This Court in a former case held, that as to Baltimore City there was no appeal provided; but there was no such decision as to counties. That the Legislature, therefore, provided for an appeal not as to cases in Baltimore City only, but also to cases arising in the counties, was, it seems to me, under all the circumstances a legislative declaration, that no such appeal theretofore existed. To interpret the Act of 1898, ch. 275, as not applying to the valuation of distilled spirits, nor to other cases under Article 81 where special methods of procedure were provided; but, as applicable to those assessments only, which were to be made by agents appointed by the County Commissioners, or authorized by the law to assess property not included in the kinds specially provided for, seems to me to be more reasonable and to conform more nearly to the legislative intent.

(Filed February 20th, 1901.)