## CONWAY W. SAMS ET AL., APPEAL TAX COURT OF BALTIMORE CITY, *vs.* JAMES M. FISHER ET AL.

*Power of Appeal Tax Court to Classify for Taxation Landed Property in the Territory Annexed to Baltimore City.*

The Acts of 1888, ch. 98, and 1902, ch 130, relating to the taxation of real estate in the territory annexed to Baltimore City under the former Act provided that after the year 1900 landed property in that territory should not be subject to the full city rate of taxation on similar property until streets should be there made and houses built in the manner prescribed by the statute. The Appeal Tax Court of Baltimore City is authorized under the City Charter (Act of 1898, ch. 123), to value and assess all property liable to taxation and to notify owners of a revision of their assessments. *Held*, that the Appeal Tax Court is empowered to determine that certain landed property in said territory has reached that state of development which subjects it to taxation at the city rate under the Act of 1902 and to classify it as such.

*Held*, further, that the Appeal Tax Court has the power to give the necessary notice to property owners whose property is to be affected by its classification as city property.

*Decided May 15th, 1907.*

Appeal from the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before Briscoe, Boyd, Pearce, Schmucker, Burke and Rogers, JJ.

*Edgar Allan Poe, Deputy City Solicitor* and *Albert C. Ritchie, Assistant City Solicitor* (with whom was *W. Cabell Bruce, City Solicitor*, on the brief), for the appellant.

The effect of the Acts of 1888 and 1902, is to prescribe a specified standard of development up to which real estate in the annex must measure before it can be subject to the full city rate of taxation. The bill of complaint avers that down to the year 1906, the plaintiffs' property had not reached this standard of development, and that therefore for 1906, and prior thereto, it had been taxed at the sixty cent rate. This allegation is of course admitted by the demurrer. The bill of complaint, however, nowhere intimates that the property had not now fully reached that stage of improvement which the Legislature has prescribed as the sole condition to full city taxation, and it must therefore be assumed that the physical condition of the property is now in all respects such as to subject the property to the full city rate for the year 1907. In other words, it is conceded, for the purpose of this case, that every requirement laid down by the Acts has been complied with.

The first inquiry is this: When property which has been subject to taxation at the sixty cent rate becomes subject to taxation at the full city tax rate, has the Appeal Tax Court power to take such property out of the list of sixty cent rate property, and enter it upon the list of full city rate property? In other words, conceding that the property in question ought to pay full city taxes, can the Appeal Tax Court perform the act of classifying the property where it belongs? Or expressing the same thing still more briefly, has the Appeal Tax Court power to list this property as subject to the tax rate which confessedly it ought to pay?

In the first place it will be observed that if the Appeal Tax Court has not this power, the result will be that there exists no officer or tribunal clothed with authority to list annex prop-

erty for taxation at the full city rate, when such property, by reason of its condition, becomes taxable at the full city rate. Although annex property may fully measure up to all the requirements which the Acts of 1888 and 1902 prescribe as necessary to subject it to the full city rate, still, such property, if the appellees' contention is correct, will in fact not pay taxes at such rate, because there is no official clothed with power to put it in its proper place upon the tax books of the city. The collection of taxes by the city at the full rate upon all that large portion of the annex which, under previous decisions of this Court, has hitherto been paying at the full rate, and which the Legislature clearly intended should pay at the full rate, would therefore instantly stop, and unless and until the Legislature comes to the rescue, there would be no way to impose more than the sixty cent rate upon such property, and this in the face of the fact that every piece of it has confessedly reached that stage of development which, under the Acts of 1888 and 1902 as construed by this Court, render it subject to the full city rate.

The duty of the local officials is ordinarily confined to valuing the property and then entering it upon the books as subject to the rate which has been prescribed for the particular class to which the Legislature says that character of property shall belong. The local officials do not determine what that class shall be. This is determined by the Legislature, which has said that property of this particular character shall be listed in this or that particular class. Therefore, the duty of the local authorities (outside of the matter of valuation, with which we are not now concerned) is confined to a mere act of bookkeeping, that is, to entering the property on their books as one of that class or list to which the Legislature has said such property shall belong.

This, we submit, is all that the Appeal Tax Court has done in the present case. The Legislature has said that when annex property reaches a certain, definite, prescribed stage of development, then it shall be taxable at the full city rate. The instant property in the annex attains this standard, then *ipso*

*facto* it becomes taxable at the full city rate, because it then falls within that class of property which the Legislature has said shall pay the full city rate. No act of the Appeal Tax Court can put in this class property which does not properly belong there; any more than any act of that Court can keep out of that class property which does properly belong there. The Legislature having defined the kind or class of annex property which shall pay the full city rate, the instant a piece of property in the annex answers the terms of this definition, then its liability to the full city rate is automatic..

It therefore follows that the action of the Appeal Tax. Court, so far as classification is concerned, is confined to the simple book-keeping act of listing at the full city rate property which falls within the Legislature's general description or classification of property which shall be taxable at that rate; and we submit that the powers conferred by the charter upon the Appeal Tax Court are ample to authorize this.

Section 147 of the Charter expressly authorizes the Appeal Tax Court to *make transfers and correct the accounts of assessable property charged to taxpayers.* When the Court takes annex property from the sixty cent rate class, and puts it in the full city rate class, it is clearly *making a transfer* and *correcting the account* of the property charged to the taxpayer.

Section 157 of the Charter expressly authorizes the Appeal Tax Court to summon any person *"whose account of taxable property may, in their judgment, require revision and correction."* When the Court notifies annex property holders to show cause why their property should not be listed at the full city rate, they do so because, in their judgment, such taxpayers' account of taxable property requires *revision and correction.*

Section 161 of the Charter directs the Appeal Tax Court, through its clerk, "to enter and record in a book or books, to be provided for the purpose, an *accurate and fair account* of all property of every sort within the city of Baltimore, * * * and a *correct description and location* of the said property so valued and assessed." It would, we submit, be impossible for the Court to keep an *accurate and fair account* of all taxable

property, and a *correct description and location* of the same, unless it has the power to list such property on its books as belonging to the particular class which the Legislature has prescribed for the character of property which it is.

Moreover, the power of the Appeal Tax Court to list annex property at the full city rate has been recognized in every one of the many cases involving annex taxation which has reached this Court. These cases embrace the following: *Sindall's case*, 93 Md. 526; *Goebel's case*, 93 Md. 749; *Kuenzel's case*, 93 Md. 750; *United Railway Co.'s case*, 93 Md. 630; *Balto. Belt R. R. Co.'s case*, 93 Md. 638; *Gittings' case*, 95 Md. 419; *Poole's case*, 97 Md. 67; *Joesting's case*, 97 Md. 589; *Rosenthal's case*, 102 Md. 298; *Hiss' case*, 103 Md. 620.

In every one of these cases the Appeal Tax Court determined that property which had formerly been paying the sixty cent rate had reached the stage of development which made it subject to the full city rate, and such property was accordingly listed or classified by the Appeal Tax Court at the full city rate. This is the precise action which is now claimed to be *ultra vires*. Yet in not one of the cases cited was any such contention either made by counsel or suggested by this Court. In every one of them the question raised and argued was as to the *propriety* of the Appeal Tax Court's action in listing the property involved at the full city rate, and this of course assumed the Court's *power* to so list it. In other words, the *power* of the Appeal Tax Court to classify has never before been questioned. The question has always been, did the Court *properly exercise this power?* The mere fact that in the above series of cases neither Court nor counsel has ever once suggested the contention which the appellees are now making, although this contention, if sound, would have finally disposed of the city's right to collect the full rate from the property which was the subject of all this litigation, is at least strong and persuasive evidence that the contention is without merit.

Not only this, but in at least two of the cases cited above, the Appeal Tax Court's power to classify has been expressly upheld. *Poole's case*, 97 Md. 67; *Joesting's case*, 97 Md. 596.

In the argument below counsel for the appellees suggested that the decisions in the Poole and Joesting cases were each inconsistent with themselves, in that this Court first held that the Appeal Tax Court can classify, and then held that if it did, such action would be *ultra vires.* We submit, however, that this is not a proper understanding of what was decided in those cases. After holding that the Appeal Tax Court could classify, this Court said that its action in this respect would be restrained by injunction *only if erroneous.* In other words, that the forum for relief from an *improper* classification was equity. Of course if in such a proceeding it appeared that the Appeal Tax Court's classification was *proper,* the bill would be dismissed.

It is not necessary that the provision for notice and a hearing should be contained in the specific tax law itself, but it is sufficient if there exists any general or local law applicable to the case, and under which the taxpayer may have his day to be heard. *Fowble* v. *Kemp,* 92 Md. 630. Therefore, the charter of Baltimore does authorize the giving of notice and a hearing in cases where it is proper for the Appeal Tax Court to exercise its right of listing annex property at the full city rate, and for this reason this contention of the appellees is unsound.

If notice and a hearing are necessary, and if the appellees are correct in saying that the alleged defect is not supplied by any local or general law, the necessary result is that the whole of that portion of section 19 which provides for the taxation of the annex after 1900, and which is separate, severable and distinct from that other portion of section 19 which provides for the taxation of the annex up to 1900, is void. Consequently, all property in the annex would now be taxable at the rate prescribed for the city generally.

In this view it would be entirely unnecessary to notify property holders before increasing their rate after 1900. The sixty cent rate would be a special rate prescribed for a limited time, and upon the expiration in 1900 of this limited time, the full rate would automatically attach to all annex property,

just as it attaches to all other city property.    As the distinction between annex property and city property would thus be obliterated, there would be no classifying for the Appeal Tax Court to do.

The proviso in section 19 of the Act of 1888, by virtue or which alone certain property in the annex is excepted from the full city rate prescribed for the annex generally is unconstitutional and void, because it results in subjecting similar property in the same taxing district to different rates of taxation, and therefore, all property in the annex is now sabject to the full city rate, without the necessity of any action on the part of the Appeal Tax Court or any other department or officer.

*M. R. Walter* and *John F. Williams* (with whom was *Randolph Barton* on the brief), for the appellees.

The sole question upon this appeal is:    Has the Appeal Tax Court of Baltimore City power and authority to decide whether real estate in the "Annex" (which was, by the Act of 1888, ch. 98, made subject for municipal purpose, to the then Baltimore County rate of 60 cents), has reached the state of development required by the Acts of 1888 and 1902, to make it now and hereafter subject to the regular city rate, and to order its classification accordingly?    The appellees claim it has not.

The only powers conferred by the City Charter on the Appeal Tax Court are: "To value and assess;" "to revise such valuation and assessment;" "to take steps for the valuation and assessment of all unassessed property;" to have "entered and recorded    *    *    an accurate and fair statement of all property of every sort within the city of Baltimore, subject to taxation, and the valuation and assessment thereof;" and "a correct description and location of the said property, so valued and assessed."    No power to classify (which "concerns primarily the rate of the levy" 97 Md. 596) is anywhere given. An appeal to the Baltimore City Court is allowed to any person dissatisfied with an assessment by that Court.

From the aforegoing summary, it is apparent that the Leg-

islature never conferred on the Appeal Tax Court any power in reference to the rate of taxation or re-classificatian. Its power was clearly intended to be limited to the ascertainment of property liable to taxation and to the valuation and assessment thereof.

As late as 1900, ch. 347 (City Code, 1906, sec. 164A) the Legislature provided that:

"The Appeal Tax Court of Baltimore City shall have the power at any time to value and assess all personal property and to revise such valuations and assessments of real property in said city, and to lower or increase said assessment of real or personal property, and to take steps for the discovery and assessment of all unassessed property of every kind. And it shall be the duty of said Court at least once in every five years to carefully make such general revision of all the assessable property in said city." Here was a specific mention of each and every power the Appeal Tax Court was to have, and there is no language that can be construed to include the power to classify.

Again. By section 150 of the Act of 1898, ch. 123 (City Charter) the Legislature declared that:

"Before increasing the assessment of any property which has been theretofore assessed, or adding any new property not valued and returned to them by the proper assessor, it shall be the duty of the said Court, as the case may be, to notify the owner of such property by a written or printed summons, &c.," and by section 170 of the same Act it was provided that:

"Any person or persons, or corporation, assessed for real or personal property in the city of Baltimore, and claiming to be aggrieved because of any assessment made by the said Court, or because of its failure to reduce or abate any existing assessment, may by petition appeal to the Baltimore City Court to review the assessment," under which it was held by this Court. in the *Joesting case*, 97 Md. 596, no appeal from re-classification, under section 19 of the Act of 1888 would lie."

Why did the Legislature when providing so specifically for

notice to owners of property and for an opportunity to be heard, and for an appeal, make no provision for notice and opportunity to be heard, and for an appeal in case of classification by the Appeal Tax Couat if that Court was vested with any such power?

Could there be anything to show more conclusively that the Appeal Tax Court was not intended to have power to reclassify than the fact that there is not the slightest recognition of it in any of the three above quoted Acts of Assembly?

If the Appeal Tax Court should be held to have power to reclassify, there is not only no appeal from its decision, but no relief can be granted by a Court of equity nor by any other Court as this Court has determined in *County Commissioners* v. *Union Mining Co.*, 61 Md. 545; *Allegany Co.* v. *New York Mining Co.*, 76 Md. 549.

But independently of all this, it seems to us that the absence of all power in the Appeal Tax Court to reclassify has been definitely settled by this Court.

"It is clear," says this Court in the *Poole case*, 97 Md. 71, "that the Appeal Tax Court, whether with or without notice to the tax payer, has no power to determine in the first place, or to alter the rate of taxation." And in the same case, page 72, and in the *Joesting case*, 97 Md. 597, your Honors say :

"We have not been advised of, and have not discovered, any specific provision of law, prescribing how and by what authority property in the annexed territory which has been brought within the condition of the Act of 1888, warranting the imposition of the city rate of taxation is to be put into that category upon the books of the Appeal Tax Court."

Now all the authorities and text writers agree that legislative grants to municipal corporations (and *a fortiori* to a subdepartment of the corporation) must be strictly construed, and "in this State the Courts have always maintained with jealous vigilance the restraints and limitations imposed by law upon the exercise of power by municipal and other corporations." *Baltimore* v. *Gill*, 31 Md. 395.

"It is a well-settled rule of construction of grants by the

Legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the Act or derived therefrom by necessary implication, regard being had to the object of the grant. Any ambiguity or doubt arising out of the terms used by the Legislature must be resolved in favor of the public." *St. Mary's Indust. School* v. *Brown*, 45 Md. 332; *Minturn* v. *Larne*, 23 Howard (U. S.) 435; *Vansant* v. *Harlem Stage Co.*, 59 Md. 333 and 334; *State* v. *Rowe*, 72 Md. 550.

Now as it has been decided in *Monticello Co.* v. *Baltimore*, 90 Md. 430, that the Appeal Tax Court "is a statutory tribunal with limited and defined powers," how can it, in view of the above rule of construction, be held, if there be no "specific provision of law, prescribing how and by what authority property in the annexed territory which has been brought within the conditions of the Act of 1888 warranting the imposition of the city rate of taxation is to be put into that category upon the books of the Appeal Tax Court" that the Appeal Tax Court has any such power.

Again: In the *Joesting case*, 97 Md., page 594, which was an application for an injunction to restrain the collection of the city tax on annex property, reclassified by the Appeal Tax Court, it was said:

"Has a Court of equity jurisdiction to restrain the levy and collection of a tax attempted to be levied and collected illegally? To this interrogatory there can be but one answer and that must be in the affirmative." (Page 594.) "If no tribunal has been provided for the determination of that question (classification) it follows that relief against such erroneous classification can be had only through the restraining powers of a Court of equity * * * In the absence, then, of any statutory provisions applicable to the precise situation here presented, the ordinary jurisdiction of a Court of equity to restrain by injunction the exercise of an *ultra vires* Act must be upheld or the injured individual would be without redress." (Page 597.)

It was thereupon held "that a Court of equity had plenary power to interfere by injunction" in that case (97 Md. 598). As under the decisions in *County Commissioners* v. *Union Mining Co.*, 61 Md. 545, and *Allegany Co.* v. *New York Mining Co.*, 76 Md. 549, *supra*, a Court of equity would have no jurisdiction if the Appeal Tax Court has power to classify, the jurisdiction of the equity Court in the *Joesting case* can be upheld upon the sole ground that the power did not exist.

BRISCOE, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore city overruling a demurrer to the plaintiff's bill of complaint, and directing an injunction to issue as prayed in the bill.

It appears from the bill, that the plaintiffs are owners of real estate, situate in that part of Baltimore City, known as the Annex, and under the terms and provisions of the Act of 1888, chap. 98, as amended by the Act of 1902, taxes had heretofore been levied for municipal purposes, upon the property at the rate of sixty cents on the hundred dollars of the assessed value including the year 1906.

The bill charges, that the sixty cent rate continued down to and including the year 1906, but that the Appeal Tax Court of Baltimore City, after notice given, was about to list or classify the property for purposes of taxation at the full city rate for 1907, which rate is $1.97½ on the one hundred dollars of its assessed value. It then charges that the Appeal Tax Court has no power or authority to classify the property, other or differently than the same is now classified on the tax rolls of the city, and that any attempt to re-classify the real estate or to change it from the tax lists on which the same is now listed for purposes of municipal taxation or to put it on any other or different tax list so that the same may be subject to a higher or greater rate of taxation is *ultra vires*, illegal and void.

The prayer of the bill is that the defendants be restrained

· by injunction, first, from listing or classifying the property for municipal taxation at a higher rate than the sixty cent rate, and secondly, that any attempt to so classify or list the property for purposes of taxation or any classification heretofore made, be declared *ultra vires*, illegal and void, and that the Appeal Tax Court be directed to remove, erase and strike the same from the list or tax rolls of the City of Baltimore.

A demurrer was interposed to the bill, which upon hearing was overruled. The Court below, holding that the order and classification by the Appeal Tax Court of the property in question at the full city rate of taxation for the year 1907, was *ultra vires*, illegal and void, decreed that an injunction issue as prayed by the bill. From this decree an appeal has been taken.

The question here presented is an important one, both to the city of Baltimore and to the tax-payers owning property situate in that part of Baltimore City formerly Baltimore County, which was annexed to the city under the Act of 1888, chap. 98.

The question immediately before us, is this, has the Appeal Tax Court of Baltimore City the power and authority under the provisions of the Acts of 1888 and 1902 to take property situate in the annex, and which has become subject to taxation at the full city rate, out of the sixty cent rate and to list or classify it at what is called the full city rate.

The answer to this question must be found in the construction to be placed upon sec. 19 of the Act of 1888, chap. 98, as amended by the Act of 1902, and upon certain sections of the Baltimore City Charter, conferring powers, on the Appeal Tax Court of Baltimore City.

By sec. 19 of the Acts of 1888, it is provided, in part, that from and after the year 1900, the property real and personal, in the annex shall be liable to taxation and assessment, in the same manner and form as similar property within the present limits of the city may be liable, provided that after the year 1900, the present Baltimore county rate of taxation shall not be increased for city purposes on any landed property

within the territory until avenues, streets, or alleys shall have been opened and constructed through the same, nor until there shall be upon every block of ground so to be formed at least six dwellings or store-houses ready for occupation.

The Act of 1902, chapter 130 subsequently passed, declared what should be considered "landed property" within the terms of section 19 of the Acts of 1888.

In this case, the bill does not allege that the property, has not reached that stage of development which is required by the statute to subject it to the full city rate for the year 1907, so under the pleadings and for the purposes of this case it must be assumed that the condition of the property in controversy is such as to meet the requirements of the Act, and to subject it to the full city rate. And this brings us to the vital question in the case, and that is, has the Appeal Tax Court of Baltimore City, the power to list or classify such property, situate in the annex, so as it will be subject to the tax rate which the Legislature manifestly intended it should be.

There can be no doubt; it seems to us, that the action of the Appeal Tax Court in this case was entirely legal and within their delegated powers.

The Legislature has defined the class of annex property which shall be liable to the full city rate, and when it reaches the standard of development required by the statute it becomes the duty of the Appeal Tax Court to so list, classify or adjust the property upon the tax books in order that it may be liable to the proper tax.

In other words, the Legislature has said that the property in the annex should be exempt from the payment of taxes at the full city rate for a definite period, but after the year 1900, and when it has attained a certain stage of development it should be taxed at the full city rate. When, therefore, property in the annex reaches the prescribed development, it falls within the class of property the Legislature clearly meant should pay the city rate.

The statute fixes the standard and the class of property,

·and this being so, the Appeal Tax Court has the undoubted right and power, under the·broad powers conferred upon it by the city charter, to transfer, list and classify the property on its books, so as it will pay the correct tax.　Act of 1898, chapter 123, secs. 6, 40, 147, 157, 161.

The right and power of the Appeal Tax Court to list and classify annex property has been upheld by a number of cases decided by this Court.

In *Baltimore City* v. *Poole & Son*, 97 Md. 67, this Court said: "When therefore the Appeal Tax Court may be informed, or have reason to believe, that any property within the territory annexed under the Act of 1888, has been brought within those conditions of the Annexation Act which will warrant the imposition of the regular city rate of taxation, they should give a reasonable notice to the owner, of their purpose to impose this rate, fixing a time and place when he can be heard in relation to the matter. We have not been advised of, and have not discovered, any specific provision of law, prescribing how, and by what authority, property in the annexed territory, which has been brought within the conditions of the Act of 1888, warranting the imposition of the city rate of taxation, is to be put into that category upon the books of the Appeal Tax Court, but it would seem in the absence of such specific provision, that that Court should have power to make such classification. The correctness of such classification, however, is a question of fact dependent upon proof as to the opening of avenues, streets and alleys, through the property and the erection of the prescribed number of houses upon a block as provided in the Annexation Act, and if no tribunal has been provided for the determination of that question, it follows that relief against such erroneous classification can be had only through the restraining power of a Court of equity; and the exercise of that power in cases involving the question of the rate of taxation under the Annexation Act, was sustained in *Sindall's case*, 93 Md. 526; *Goebel's case, idem*, 749; and *Kuenzel's case, idem*, 750, where the injunction was denied only because the amount involved was not sufficient to give a Court of equity jurisdiction."

Poole's case, was cited and approved, in the later case of *Joesting* v. *Baltimore City*, 97 Md. 597, and there is nothing in that decision in conflict with what was said in Poole's case, *supra*, or in the previous cases on this subject.

To sustain the appellees contention in this case would practically defeat and annul the clearly expressed intention of the Legislature in sec. 19 of the Act of 1888, because it is conceded, that if the Appeal Tax Court has not the power to list and classify annex property for taxation when it measures up to the development required by the act, then no tribunal is clothed with the authority so to do. It would be impossible to impose more than the sixty cent rate, upon any annex property, notwithstanding the fact it may have reached the condition which renders it under the statute subject to the full city rate.

As to the question of notice, it is only necessary to say that it appears to have been given in this case. Sec. 157 of the Baltimore City Charter expressly provides, that the Appeal Tax Court may "Summon before them any person, whose account of taxable property may, in their judgment require revision and correction and examine such person on oath touching the same."

While the provision for notice and hearing may not be contained in the act itself, yet a hearing is amply provided by the section of the charter above cited. *Fowble* v. *Kemp*, 92 Md. 630.

We therefore hold that the Appeal Tax Court of Baltimore City has ample authority and power to list and classify annex property, as subject to the full city rate, when the property reaches that condition of development provided by the Acts of 1888 and 1902 and that it has the further power to give the necessary notice and a hearing to the property holders, whose property is to be affected thereby. As the view thus taken is decisive of the case, the other questions presented on the record need not be considered by us.

For the reasons given, the decree of the Circuit Court of Baltimore City will be reversed, and the bill of complaint dismissed.            *Decree reversed, bill dismissed with costs.*