May 26, 1955. } No. 4421.

OPINION OF THE JUSTICES.

The following resolution adopted by the House of Representatives on May 5, 1955, was filed in this court May 5, 1955:

"Resolved, That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following question of law:

"Do the provisions of House Bill No. 43, An Act relative to forest conservation, violate the fundamental law of the state relative to taxation of property:

"Further Resolved, That the Speaker transmit a copy of House Bill No. 43 to the Clerk of the Supreme Court for the consideration of said court."

The following answer was returned:

*To the House of Representatives:*

The undersigned Justices of the Supreme Court submit the following answer to the inquiry contained in your resolution of May 5, 1955, with reference to House Bill No. 43 entitled, An Act relative to forest conservation. Your inquiry is whether House Bill No. 43 violates the fundamental law of the state relative to taxation of property.

While we are concerned only with the taxation features of this act a summary of its provisions are necessary for an understanding of the problem. The act declares the preservation, conservation and protection of forests and water resources and the continuous growth of timber on land suited thereto to be the public policy of New Hampshire. The act proposes to repeal the so-called timber tax (R. L., c. 79-A, as amended) and provides for the classification of lands from which trees have been cut as forest lands except "where trees have been removed" for the following reasons: "(1) to benefit the general health and increase the annual growth of residual stands or to remove dying or diseased trees; (2) to clear the land for bona fide agricultural, mining, business or residential purposes; (3) to clear rights of way, camp sites, or firebreaks."

Lands classified as forest lands or reforestation lands are to be removed from "the current assessment roll" and to be subject to an annual "forest fee." The act provides that the private landowner shall practice forest conservation, obtain a license to cut timber and shall restock the property in accordance with regula-

tions promulgated by the State Forester. If such conservation practices are not followed the State Forester is authorized to correct these conditions at a cost not to exceed sixteen dollars per acre which is to be paid by the landowner. The act would place a flat tax of three dollars per acre on land if the owner meets the conservation practices of the State Forester and provides that the owner shall pay a tax of ten per cent of the value of the timber at the time it is cut. It would further provide an annual appropriation for the purchase of additional state forest lands.

Formerly it was the law in this state that the taxation of standing wood and timber could not be at a rate less than that imposed upon property in general. *Opinion of the Justices,* 76 N. H. 609. With certain exceptions standing timber was required to be taxed at the same rate as other real property or income. *Opinion of the Justices,* 84 N. H. 557. In 1942, *Art.* 5th, Part Second of the New New Hampshire Constitution was amended as follows: "For the purpose of encouraging conservation of the forest resources of the state, the general court may provide for special assessments, rates and taxes on growing wood and timber." It is clear that this amendment authorizes the General Court to tax growing wood and timber at rates which are different from those imposed on other property or income. The amendment allows the Legislature to tax growing wood and timber by any reasonable method, whether it takes the form of a fee or a certain percentage of the stumpage value or a flat rate per acre. *Cf. Opinion of the Justices,* 84 N. H. 559, 574. The tax need not be correlated with other taxes. *Brock* v. *Farmington,* 98 N. H. 275.

It is generally recognized today that the encouragement of reforestation and forest conservation affects the public interest and the public welfare so that the General Court may enact legislation which will prevent the indiscriminate damage or destruction of the forests and water resources of the state even though this may involve some regulation and control over the private ownership of such property. *Questions and Answers,* 103 Me. 506; *State* v. *Dexter,* 32 Wash. (2d) 551, *aff.* 338 U. S. 863. This principle was stated as follows in *Conway* v. *Water Resources Board,* 89 N. H. 346, 349: "The State clearly may engage in undertakings to develop its resources. It is no less in its interest than to conserve them. . . . " Since the protection and promotion of forests and water resources are within the ambit of public welfare the taxing power may be used to aid that public purpose. *Opinion of the*

*Justices,* 84 N. H. 559, 574, 577; *Baker* v. *West Hartford,* 89 Conn. 394; Anno. 13 A. L. R. (2d) 1120; Schulz, Conservation Law and Administration, 403 (1953). It follows that growing wood and timber may be classified separately from other property for the purposes of taxation. Note, 53 Harv. L. Rev. 1018; Report of the N. H. Timber Tax Study Committee (1954).

However the proposed act as drafted contains many words and phrases which are undefined and uncorrelated. Some examples of this are "reforestation lands," "forest fee," "bare land tax," and "sustained yield management." One section of the act has no section heading; there may be an inconsistency between the taxing provisions of sections 7 and 8; likewise the provisions of sections 4 and 7 may be conflicting. The provisions for rules and regulations to be promulgated by the State Forester may be inadequate in view of the absence of standards and definitions for his guidance in the act. Gulick, American Forest Policy, 187 (1951). What was said in *Opinion of the Justices,* 95 N. H. 548, 551, is pertinent here: "While we do not pass on the wisdom or advisability of the proposed bill, it may be helpful to note that the bill as drafted is unnecessarily ambiguous . . . Such confusion is 'not helpful either to property owners or taxing officials' (*Palmer* v. *Coulombe,* 95 N. H. 266, 269) and should be resolved."

For the above reasons it is impossible to give a specific answer to the question you have raised as applied to the act in its present form but it is believed that the foregoing may be sufficient for the main purposes of your general inquiry. Because of the defects of the act as a whole we have not attempted to answer all of the specific questions that could arise under it in its present form.

> FRANK R. KENISON.
> LAURENCE I. DUNCAN.
> AMOS N. BLANDIN, JR.
> EDWARD J. LAMPRON.
> JOHN R. GOODNOW.

May 26, 1955.

*Clarence Lessels* for the bill.