STATE TAX COMMISSION ET AL. *v.* GALES ET AL.

(Four Appeals In One Record.)

[No. 61, September Term, 1959.]

544

*Decided June 13, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*John Martin Jones, Jr., Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellant State Tax Commission.

*Bernard F. Goldberg* for the appellees and cross appellants H. Lee Ramsburg, et al.

*Charles E. Hogg* for the appellee M. A. Wakefield, Jr., Inc.

No brief and no appearance for the appellees Timothy W. Gales, et ux.

Brief *Amicus Curiae* filed by Maryland Farm Bureau, Inc.; *J. B. Randol Carroll, Hilary W. Gans,* and *Markell, Veazey & Gans* on the brief.

BRUNE, C. J., delivered the opinion of the Court.

This case is now before us for decision following a reargument granted on motion of the appellant. In our opinion following the original argument (published in the Baltimore Daily Record of February 9, 1960), we assumed, without deciding, that, as the appellant State Tax Commission (now the State Department of Assessments and Taxation) contended, the Legislature had power to grant a partial exemption from taxation of land. Even with that assumption, a majority of this Court was of the opinion that the classification which the statute undertook to make was not sustainable. The appellant contended in its motion for reargument that this conclusion was erroneous and also that it was reached upon an inadequate record insofar as the ground of decision was concerned. We withdrew our original opinion upon granting the motion for reargument, and we have now considered the case anew. This opinion supersedes our original opinion, and leaves open the question upon which that original opinion turned.

In this case [1] there are three appeals and one cross-appeal. We are no longer concerned with the latter by reason of a confession of error made by the cross-appellee at the time of the reargument, if the statute should be held valid. All involve Code (1957), Article 81, Section 19(b) (referred to below simply as Section (or Sec.) 19(b), without reference to Article 81 or to the 1957 Edition of the Code, or as "the Farm Assessment Act"). The appellant, referred to below as the "Commission", is the State Tax Commission (these proceedings having originated prior to the passage of Ch. 757 of the Acts of 1959), and the appellees are owners of properties located in Howard County. What is now Sec. 19(b) as originally enacted (over a veto) by Ch. 9 of the Acts of 1956 was an addition to Sec. 17 of Article 81 of the Code of 1951 under the sub-title "Method of Assessment" reading as follows:

"Lands which are actively devoted to farm or

---

1. See also the companion case of *Greenway Construction Co., Inc. v. State Tax Comm.*, decided contemporaneously, 222 Md. 573, 161 A. 2d 692.

agricultural use shall be assessed on the basis of such
use, and shall not be assessed as if subdivided or on
any other basis."

Section 680 of the Acts of 1957 added provisions to Sec.
19(b) empowering the Commission to establish criteria for
determining whether lands are actively devoted to farm or
agricultural use.  Such criteria are to include, but are not
limited to the following: (i) zoning; (ii) past and present
use of the land, including the land under "soil bank" pro-
visions of the Federal Agricultural Stabilization Act; (iii)
productivity of the land, including timberlands and lands
used for reforestation; and (iv) the ratio of farm or agricul-
tural use as against other uses of the land.

In all three cases here combined the Commission is contest-
ing the holding of the Circuit Court that Sec. 19(b) is uncon-
stitutional.  Each of the taxpayers takes the opposite position
on this question.  The Commission is seeking to uphold a stat-
ute which would permit lower tax assessments than would
otherwise be made; and disappointed taxpayers, held not to be
entitled to the benefit of the statute, are seeking to strike it
down.  The positions of the parties thus may seem the reverse
of the usual positions of tax authorities and taxpayers.[2]

The Commission contends that the statute is valid as a rea-
sonable partial exemption from taxation.  The appellees attack
it as providing for the classification of land for taxation in con-
travention of Article 15 of the Maryland Declaration of Rights.
This is a question which we did not decide in our original opin-
ion.  We shall now address ourselves to its determination.

Article 15 of the Declaration of Rights now reads as fol-
lows:

"That the levying of taxes by the poll is grievous
and oppressive and ought to be prohibited; that pau-
pers ought not to be assessed for the support of the
government; that the General Assembly shall, by uni-
form rules, provide for separate assessment of land

---

2. Appellees' right to attack the statute is not challenged. Cf.
*County Commrs. of Anne Arundel Co. v. Buch,* 190 Md. 394, 58 A.
2d 672.

and classification and sub-classifications of improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, and uniform within the class or sub-class of improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community."

The trial court held that the requirements of uniformity contained in Article 15 applied to assessments of land as well as to the rate of taxes thereon. The Commission concedes that Article 15 does not expressly grant the right to classify land for tax purposes, but contends that nonetheless the statute is valid. In essence, it argues that the Farm Assessment Act allows a partial exemption based upon what it says is a sound policy to protect agriculture and to prevent farmers in suburban areas from being forced off the land by high assessments and high taxes based thereon, and it contends that the General Assembly has always had power to grant complete exemptions, and that it also has power to grant partial exemptions.

The Commission is entirely correct in pointing out that the power of the Legislature to grant full exemptions from taxation where reasonable and for a public purpose has long been recognized in this State, even though there is no express constitutional authorization therefor. *Buchanan v. Com'rs of Talbot Co.,* 47 Md. 286; *Wells v. Comm'rs of Hyattsville,* 77 Md. 125, 26 A. 357; *Simpson v. Hopkins,* 82 Md. 478, 33 A. 714; *City of Baltimore v. Minister, etc., of Starr Methodist Protestant Church,* 106 Md. 281, 67 A. 261; Niles, *Maryland Constitutional Law,* p. 32. See also *Kimball-Tyler Co. v. Mayor, etc., of Baltimore,* 214 Md. 86, 133 A. 2d 433. This was true, although Article 15, prior to the 1915 amendment, required uniformity with regard to assessment as well as with

regard to tax rate. *National Can Corp. v. State Tax Comm.,* 220 Md. 418, 153 A. 2d 287.

The Commission has called attention to a statement in the majority opinion in the *National Can Corp.* case, *supra,* 220 Md. at 425 (an opinion written by the author of the present opinion) that "[t]he power to classify property for purposes of taxation was conferred by the amendment to Article 15 * * * ratified November 2, 1915." (This statement was, as the Commission points out, in accordance with one made in its brief in that case.) It made no practical difference in *National Can* whether the 1915 amendment to Article 15 conferred the above power to classify or removed a previously existing bar to its exercise. To avoid possible difficulty in the future, however, we may say that we consider it preferable to state that the 1915 amendment removed some previously existing bar to the exercise of a power of reasonable classification of property for purposes of taxation. This, we believe, is in accord with the general rule long recognized in this State that the taxing power, to which the power of classification for tax purposes is incidental, is an inherent power of the State, exercisable by the General Assembly within such limits as may be imposed by the Constitution of the State (including the Declaration of Rights) or by the Constitution of the United States. See *State v. Sterling,* 20 Md. 502, 516; *Faust v. Twenty-Third German American Bldg. Ass'n,* 84 Md. 186, 192, 35 A. 890; *Allen v. National State Bank of Camden, N. J.,* 92 Md. 509, 512, 48 A. 78; *City of Baltimore v. Safe Deposit & Trust Co.,* 97 Md. 659, 662, 55 A. 316. Cf. *State v. Mayhew,* 2 Gill 487. (We may observe in passing that any bar based upon uniformity which the 1915 amendment to Article 15 removed, was one which dated from the adoption of the original Declaration of Rights and Constitution of the State in 1776, since Article 15 was only slightly changed from its form in 1776 (when it was Article 13) until 1915. An "inherent power" of this State was thus limited *ab initio.*)

Under the terms of the 1915 amendment to Article 15, it is clear that the General Assembly has power to classify and subclassify both improvements on land and personal property, so long as any such classification or sub-classification is not

arbitrary or unreasonable. In the case of *ad valorem* taxes, the application of a lower rate of assessment or taxation to one or more classes of property than to others sets up a classification which operates practically to grant a partial exemption in favor of the class or classes subject to the lower rate. Doubtless because of this practical effect this Court, in speaking of the restrictions (chiefly as to rates rather than assessments), imposed upon taxation for city purposes of property in the area annexed to the City of Baltimore by the Annexation Act of 1888 (Ch. 98 of the Acts of that year), has referred to them a number of times as exemptions, at least twice as partial exemptions. See *Daly v. Morgan,* 69 Md. 460, 470-471, 16 A. 287 ("qualified exemption"); *Sindall v. City of Baltimore,* 93 Md. 526, 529-530, 534, 49 A. 645 (1901); *United Railways & Electric Co. v. City of Baltimore,* 93 Md. 630, 634, 49 A. 655 (1901); *City of Baltimore v. Rosenthal,* 102 Md. 298, 305, 62 A. 579 ("partial exemption"); *City of Baltimore v. Gail,* 106 Md. 684, 692, 68 A. 282 ("partial exemption"); *Lauer v. City of Baltimore,* 110 Md. 447, 457, 73 A. 162 (1909), quoting from *Sindall;* and *Williams v. Broening,* 135 Md. 226, 236, 108 A. 781.

But even when we say that the Farm Assessment Act creates a partial exemption from *ad valorem* taxation of land used for agricultural purposes, we do not thereby solve the problem. The underlying question is whether or not the Legislature has the power to grant such an exemption in the face of the terms of Article 15 of the Declaration of Rights as amended in 1915.[3] Such an exemption involves a separate classification (from other land) of land used for agricultural purposes, but the validity of such a classification rests not solely upon the reasonableness thereof, but more fundamentally on the power of the Legislature to make it at all.

Some consideration of the law prior to 1915 may be desirable. Extensive discussions of it may be found in an opin-

---

3. Ch. 64 of the Acts of 1960, adopted after our now withdrawn opinion in this case had been made public, proposes an amendment to Article 15, to be voted on in November, 1960, expressly empowering the Legislature to classify land, as well as improvements on land and personal property.

ion rendered in 1952 by then Attorney General Hammond (now Judge Hammond of this Court) and Mr. Robert M. Thomas, then an Assistant Attorney General, reported in 37 Op. Atty. Gen., Md. 424, and in an article by Mr. H. H. Walker Lewis entitled *The Tax Articles of the Maryland Declaration of Rights,* 13 Md. L. Rev. 83, published in 1953. The matter is also touched upon less extensively in the *National Can* case, *supra,* 220 Md. 425-426.

Article 13 of the Declaration of Rights as contained in the Constitution of 1776 was continued without any important change as Article 13 of the Constitution of 1851, and without further change (except as to numbering) as Article 15 in the Constitutions of 1864 and 1867. The provisions against imposing poll taxes and against the taxation of paupers and those permitting the laying of taxes with a political view are continued in the 1915 amendment. The provision exempting paupers was followed in the 1851, 1864 and 1867 Constitution by this clause:

> "but every other person in the State, or person holding property therein, ought to contribute his proportion of public taxes to the support of Government, according to his actual worth in real or personal property."

Under this provision, as we have noted, exemptions from taxation of certain kinds of property have been upheld when not constituting an arbitrary discrimination in favor of a particular class. As the late Judge Alfred S. Niles observed in his work on *Maryland Constitutional Law* (p. 32): "This exception seems to be somewhat hard to maintain on principle, but as our Court has said, the power of the legislature to grant such exemption 'has been exercised from the origin of the government.'" We have been referred to no case, nor have we found any, in which this Court has explicitly upheld a partial exemption against a direct attack based upon Article 15 either in its pre-1915 form or in its present form.

The Commission has urged upon us some cases dealing with taxation of property in areas annexed to a city, chiefly cases growing out of the Baltimore City Annexation Act of 1888,

*supra,* and subsequent amendments thereto or modifications thereof.

We have given careful consideration to the annexation cases and to the statutes which gave rise to them. A full review of them all would prolong this opinion unduly and would throw little light on our problem. Most of them involve the City of Baltimore, particularly that portion annexed to it pursuant to Ch. 98 of the Acts of 1888, sometimes called the "Annex" or (after 1918) the "Old Annex."

The statutes providing for or dealing with different rates of assessment or taxation, or both, in the territory annexed in 1888 were as follows: Acts of 1888, Ch. 98, Sec. 19, freezing assessments and the tax rate until 1900, requiring that until 1900 the City expend for improvements in the Annex an amount equal to the revenues collected therefrom, and providing that after 1900 real and personal property in the Annex should be taxed in the same way as similar property elsewhere in the City, with a proviso limiting the tax rate thereafter on "landed property" until streets should be opened and constructed and not less than 6 buildings per block should be erected; Acts of 1898, Ch. 123, the "New Charter" of Baltimore City, incorporating as Sec. 4 substantially the provisions of Sec. 19 of Ch. 98 of the Acts of 1888; Acts of 1902, Ch. 130, adding Sec. 4 A to the City Charter, defining "landed property" and other terms used in Sec. 4; Acts of 1908, Ch. 286 (p. 581), repealing Secs. 4 and 4 A of the Charter and reenacting them with amendments as a new Sec. 4 providing for classification of real and leasehold property in the "Annex" as urban, suburban or rural, taxable, respectively, at 100%, 66⅔% and 33⅓% of the full "old city" rate, with minimum rates for suburban and rural property; Acts of 1918, Ch. 82, annexing additional territory to the City, and, *inter alia,* establishing such territory as a separate taxing district with taxes increasing over a 20-year period from 60% to 100% of the "old city" rate, and providing that beginning in 1939 and thereafter all property within the city limits should be subject to the same rate of taxation, and expressly not repealing or affecting any existing or future law or ordinance "fixing different rates of taxation upon different classes of

property"; Acts of 1920, Ch. 721, amending Sec. 4 of the Charter, but continuing the three classifications of real and leasehold property in the territory annexed in 1888 and the above percentage rates, though omitting the minimum amount; Acts of 1927, Ch. 331, continuing the three classifications, but providing for their elimination by 1939 through initial and subsequent annual increases in the rate of taxation on "suburban" and "rural" property.

Cases in addition to those cited above with regard to tax exemptions arising under these annexation statutes having some pertinence to the present question include *Baltimore Belt R. Co. v. City of Baltimore,* 93 Md. 638, 49 A. 1134 (1901), a companion case to *United Railways & Electric Co. v. City of Baltimore, supra; City of Baltimore v. Poole & Son Co.,* 97 Md. 67, 54 A. 681 (1903) ; *Joesting v. Baltimore,* 97 Md. 589, 55 A. 456 (1903) ; and *Sams v. Fisher,* 106 Md. 155, 66 A. 711 (1907). See also *Valentine v. City of Hagerstown,* 86 Md. 486, 38 A. 931, arising under a different statute.

Under these statutes and decisions there was in fact, as the Commission points out, partial exemption from taxation in the Annex for a period of about fifty years. Initially such exemption was upheld in *Daly v. Morgan, supra,* 69 Md. 460, 16 A. 287 (1888) on the ground that Sec. 19 of the Annexation Act of 1888 created a separate taxing district (the Annex) within the new limits of the City, that taxation within the district was equal and uniform and that the requirements of Article 15 were therefore satisfied. That situation did not, however, prevail after 1900 under the proviso which then became operative, since different rates of taxation might and did then apply to differently classified blocks or tracts in the Annex, depending largely upon the existence, lighting and kind of paving of streets and the location of properties with relation thereto. Partial exemptions from taxation in the Annex continued, however, to be at least tacitly recognized. After 1900 and until Ch. 286 of the Acts of 1908 went into operation, there were two classifications in the Annex with different rates of taxation. Thereafter, and until all such differentials ended after 1938, there were three. Most of the cases here referred to arose prior to 1915, and most of them

involved efforts by taxpayers to obtain the benefit of reduced taxation. One, *Williams v. Broening,* 135 Md. 226, 108 A. 781 (1919), was decided after the 1915 amendment. In that case the validity of the classification was not attacked by the City, and the taxpayers sought to bar a charter amendment which would have done away with it. The decision of this Court in favor of the taxpayers had the effect of continuing the then existing classification in force.

So far as we are informed, the post-1900 proviso, in either its original form or as later amended (or superseded) was attacked only three times, and only twice on the ground of conflict with Article 15. This Court did not decide the question in either of the cases where Article 15 was invoked.

The attack in *Joesting v. City of Baltimore, supra,* was based upon an alleged violation of the contract clause of the Federal Constitution by reason of the adoption of the 1902 amendments. This attack was made by the City and was unsuccessful. It was held that the Annexation Act was not a contract, and it was further held that, even if it were, the City was not a party to it and therefore was in no position to complain.

The original attack on the post-1900 proviso is to be found in the appellant's brief in *Daly v. Morgan, supra.* It was not passed upon by the Court. In fact, careful examination of the three opinions in that case will show that no one of them stated either the text or substance of that proviso or even mentioned it at all. The statement in *City of Baltimore v. Gail, supra,* that the validity of the "partial exemption" under that proviso had been upheld in *Daly v. Morgan* appears to be erroneous. Its validity was not under attack in *Gail,* and the observation may, therefore, not have been necessary to the decision of the case. That erroneous statement is the nearest thing that we have found to an actual holding that a "partial exemption" to some, but not all, property within a taxing district was valid.

The other attack on the post-1900 proviso was made by the City in *Sams v. Fisher, supra,* 106 Md. 155, 66 A. 711 (1907). There the question was whether or not the Appeal Tax Court of Baltimore had power to reclassify for taxation property in

the Annex which had reached the stage of development which would take it out of the terms of the post-1900 proviso. The City contended that such power existed and contended, in addition, that the proviso was unconstitutional under Article 15 as imposing different taxes upon properties in the same taxing district and hence, that even without action by the Appeal Tax Court, property in the Annex was subject to the full City rate of taxation. This contention was not passed upon nor even mentioned in this Court's opinion, which upheld the power of the Appeal Tax Court to make the challenged reclassifications.

Near the close of the majority opinion in *Daly v. Morgan,* the question was raised but left open, whether the rate of taxation prescribed by the Annexation Act should be "construed as a contract and, therefore, binding till 1900, or a mere exemption or privilege which a subsequent Legislature may repeal * * *." The court said that if it was not sustainable as a contract, this would not affect the validity of the entire Act. The Court also spoke of the Legislature and the voters "relying upon the good faith of the State not to repeal the qualified exemption," assuming that Section 19 of the Act did not constitute a contract and was subject to repeal. The contract theory was later rejected in *Joesting,* where the City sought to invoke it as to the post-1900 proviso. It will be observed that the above remarks of the Court in *Daly v. Morgan* were directed only to a possible contract binding until 1900.

Since *Daly v. Morgan,* the first of the annexation cases, there have been some five different lines of thought involved with regard to limitations upon the City's power to tax property in the Annex. One is the consideration which undoubtedly was a strong motivation in the adoption of Section 19—the unfairness of subjecting property still essentially rural to full city taxation, from which it would derive no real benefit. A second is that the City is a mere subordinate political unit which can exercise no powers of taxation in excess of those which the Legislature has conferred upon it. A third is the separate taxing district theory, a fourth is the contract theory and a fifth is that the good faith of the State is pledged

to adhere to the provisions of the Act. Each of these thoughts can be found in one or more of the later cases, with the emphasis sometimes on one and sometimes on another. As above noted, the contract theory was definitely rejected in *Joesting*.

Without undertaking here to review all of the annexation cases in detail, we think it fair to say that some of them do support the Commission's contention that the validity of partial exemptions has been recognized or assumed; but we also think it fair to say that in none of them was the validity of such exemptions directly adjudicated. The last of the annexation cases involving the old (1888) Annex and the only one decided after 1915, *Williams v. Broening, supra,* reached its result on the ground that the City lacked power to remove the limitations on its taxing power over property in the Annex which the Legislature had imposed. The power of the Legislature to impose those limitations was not challenged.

In view of the absence of any square adjudication of the power of the Legislature even prior to the 1915 amendment of Article 15 to grant partial exemptions from taxation, the annexation cases seem rather weak foundations upon which to support the existence of such a power. Furthermore, not one of the five lines of thought which have appeared in those cases would, in our view, support the partial exemption here sought to be sustained. The contract theory, even it had not long since been found invalid, would be wholly inapplicable, for there is nothing resembling a contract. There is likewise no foundation for any argument involving the good faith of the State not to repeal a tax advantage which served as an inducement to action by taxpayers, since no such action has been induced or taken. There is also no attempt by any political subdivision of the State to exceed the limits of the taxing power which the Legislature has conferred upon it. There is no setting up of any separate taxing districts—quite the reverse, there is a setting up of different rates of assessment within single taxing districts. Finally, there is no question of the lack of a *quid pro quo* for new taxes, since there are no new taxes. Increased taxes, the burden of which the Farm Assessment Act seeks to avoid or shift, are

the consequence of increased land values, which, in turn, are the consequence of increased population pressures which are neither created nor confined by the boundaries of political subdivisions.

In the opinion of the Attorney General above referred to, 37 Op. Atty. Gen. Md. 424, the statute under consideration provided for the assessment for county or municipal taxation of stock in trade at 75% of its market value. The authors expressed the view (at p. 429) that such a statute would have been unconstitutional under Article 15 prior to the 1915 amendment, stating that "the power to classify for a total exemption did not carry with it the power to classify for a partial exemption or the equivalent thereof." In reaching this view they cited a number of Maryland cases, among them: *State v. Philadelphia, Wilmington & Baltimore R. R. Co.,* 45 Md. 361; *City of Baltimore v. Baltimore & Ohio R. R. Co.,* 6 Gill 288; *State v. Cumberland & Pennsylvania R. R. Co.,* 40 Md. 22; and they pointed out that "under the early cases Article 15 extended to matters of valuation and assessment, and required equal and uniform assessments based on actual value." They went on to say (and we agree): "These early cases also indicate that Article 15 prohibited classification and required uniformity and equality as to all property and among various classes and species." (P. 428.)

The power to grant complete exemptions is, of course, not unlimited. In *Wells v. Commrs. of Hyattsville,* 77 Md. 125, 26 A. 357, a statute exempting all personal property from taxation and imposing a single tax on real estate was held invalid. See also *Maxwell v. State ex rel. Baldwin,* 40 Md. 273, where a statute in terms exempting from taxation all property in the State except certain enumerated kinds was held invalid under Article 15, and *City of Baltimore v. Starr Methodist Protestant Church,* 106 Md. 281, 67 A. 261, where a statute granting an exemption in favor of a wharf property owned by a church was likewise held invalid. See also *Schley v. Lee,* 106 Md. 390, 402, 67 A. 252.

The Attorney General's opinion above cited noted also (p. 433) that the Legislature has power to classify property for purposes of exemption, citing *Williams v. Baltimore,* 289

U. S. 36, and *City of Baltimore v. German-American Fire Ins. Co.,* 132 Md. 380, 103 A. 980. It then observed that "[t]here is little evidence, however, to indicate that the power to classify for purposes of exemption is any broader under Article 15, as amended, than it was originally."

In reaching (with some doubt) the conclusion that the statute then under consideration would probably be held valid, the above opinion referred to a statement in *Rogan v. County Comm'rs of Calvert County,* 194 Md. 299, 71 A. 2d 47, based in turn upon *Leser v. Lowenstein,* 129 Md. 244, 98 A. 712, as indicating that it was then highly dubious whether the amended Article 15 extended to matters of assessment and valuation. We may note at this point that we do not understand the Commission to contend that Article 15 does not extend to such matters; but in view of the statement in the *Rogan* case, the matter should not, we think, be passed over without comment.

Some confusion seems to have grown out of a statement in *Leser v. Lowenstein, supra,* or perhaps from a restatement of it in *Rogan v. County Comm'rs of Calvert County, supra.* In the *Leser* case a distinction was drawn between the provisions of Article 15 (as amended in 1915) dealing with requirements (a) "that the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and sub-classifications of improvements on land and personal property * * *" and (b) that "all taxes thereafter provided to be levied * * * shall be uniform as to land within the taxing districts, and uniform within the class or sub-class of improvements on land and personal property * * *." The second provision, (b), was held to be self-executing; the first, (a), was held not to be. The Legislature had failed to adopt new and uniform rules pursuant to requirement (a). As a result of this failure to act, the previously existing laws relating to assessments were held to continue in force, since requirement (a) was not self-executing. It was with direct reference to (b), and not to (a), that the Court said (129 Md. at 250): "This provision refers not to *assessments,* but to *future levies* of taxes." That was an obviously correct statement. Cf. Lewis, *Maryland Tax Articles,* 13 Md. L. Rev. 83, at 103-107.

In *Rogan v. County Comm'rs of Calvert County, supra,* this statement was referred to as a holding that the provision in the amendment to Article 15 ratified in 1915 "declaring that all taxes to be levied by the State for the support of the State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, refers to levies of taxes and not to assessments." This statement in and of itself, though literally accurate, seems to have created the impression that under Article 15, as amended, there is no requirement at all of uniformity of assessments even within a class.

We think that the *National Can* case shows that Article 15 does require (as does the Fourteenth Amendment) uniformity of assessment *within a class,* though there may be differentiation as to the basis of assessments as between different kinds of property when based upon a permissible and reasonable classification. See also *Susquehanna Power Co. v. State Tax Comm.,* 159 Md. 334, 151 A. 29. As we said in the *National Can* case (220 Md. at 429) : "The test which we deem appropriate is the reasonableness of the classification rather than the method by which a difference in the amount of taxes is effected—whether by a difference in percentage of assessment or by a difference in the rate of taxation applicable to the respective classes." We were there dealing with a differentiation which we thought clearly permissible under Article 15—that, between real property and personal property.

Further in connection with the opinion of the Attorney General rendered in 1952, above referred to, we take it that the statement (at p. 437) that "the Legislature does have the power to make reasonable classifications of property for the purpose of assessing each classification at a different percentage of value" was based directly upon the language of Article 15 as amended in 1915 and did not suggest that the Legislature had power under the limitations therein stated to establish different classifications of land for purposes of taxation. That opinion was concerned with a classification or sub-classification of personal property made by the statute there under consideration, not with any attempt to classify or

sub-classify land, and we see no reason for reading it as having any broader application. As to personal property we think the conclusion reached is in accord with the views which we expressed in the *National Can* case, *supra.*

That the 1915 amendment to Article 15 does not permit different classifications of land as such was clearly the view of Mr. Lewis in his article above cited in which he stated (13 Md. L. Rev. at 102): "Classification is authorized as to improvements and personal property, although not as to land." As we said in the *National Can* case (220 Md. at 425): "[p]rior to that amendment, taxes were required under Article 15 to be apportioned in accordance with the actual worth of the taxpayer in real or personal property. This necessarily meant uniformity of assessment as well as uniformity of tax rates." We then cited Mr. Lewis' article, *State v. Cumberland & Penn. R. R. Co., supra,* and *Schley v. The County Comm'rs of Montgomery County,* 106 Md. 407, 67 A. 250. The 1915 amendment to Article 15 did not reduce any previously existing restrictions upon the power of the Legislature to classify or sub-classify *land* for tax purposes.

The fundamental difficulty with the Commission's argument in support of the validity of the Farm Assessment Act on the ground that it is a partial exemption, is that it would establish a power of classification which Article 15 denies, simply by giving it another name. We find the general rule against doing indirectly that which cannot be done directly clearly applicable here and of compelling force, even against the Commission's argument that the greater includes the less and, hence, that a partial exemption is permissible because a complete exemption might have been granted. As has often been stated, taxation is an intensely practical matter. (Indeed, it is because of its practical operation, rather than the terms in which it is expressed, that the Commission contends that the Farm Assessment Act operates to create a partial exemption. It certainly is not called one.)

The objections to a partial exemption because it undermines uniformity of taxation have been recognized and stated in some cases in other States having constitutional limitations

similar to ours. See *Knowlton v. Supervisors of Rock County,* 9 Wis. 410 (commented on in a note in 1953 Wis. L. Rev. 141) ;[5] *Hale v. City of Kenosha,* 29 Wis. 599; *Opinion of the Justices,* 195 Mass. 607, 84 N. E. 499; *Inhabitants of Cheshire v. County Comm. of Berkshire,* 118 Mass. 386; *Opinion of the Justices,* 324 Mass. 724, 85 N. E. 2d 222. See also Cooley, *Constitutional Limitations* (8th Ed.), pp. 1091, 1092.

In the *Cheshire* case, it was held that a statute providing that dams, reservoirs and lands under the same used to supply water for manufacturing were to be taxed at the same rate as the lands surrounding these properties, violated the uniformity requirement of the State constitution. The court did not consider the statute to be an exemption, but in the recent Massachusetts *Opinion of the Justices* above cited, where the proposed statutes under consideration would have exempted new residential buildings from taxation for a period of five years, the Justices, in commenting on the *Cheshire* case, said (85 N. E. 2d, at 227-228) : "but whether or not called an exemption the effect would have been to have taxed the land with the improvements at the value of land, for the purpose, no doubt, of encouraging manufacturing, just as the effect of the present proposed bills would be to tax the land upon which are the buildings at the value of the land, for the purpose, no doubt of encouraging building. * * * Such exemptions would, we think, constitute in themselves a serious inroad upon the proportional principle and could readily serve as stepping stones toward still further encroachments."

In the earlier *Opinion of the Justices* above cited, it was stated (195 Mass. at 614) : "A right to exempt as a whole even if it exists does not authorize a partial exemption con-

---

5. *Knowlton v. Supervisors of Rock County,* 9 Wis. 410, has probably been overruled by *Wisconsin Central R. R. Co. v. Taylor County,* 52 Wis. 37, as to its holding that agricultural lands within a city could not be taxed on a different basis from other lands in the city, but this does not seem to impair the force of its reasoning as to requiring that all property of the same class be taxed, if at all, on the same basis.

ditional upon the property exempted paying an arbitrary percentage which is not proportional." We may observe that under our Farm Assessment Act there would be no semblance of uniformity as between assessments on lands used for agricultural purposes and adjacent lands even within a single county or other taxing district, for the difference in valuation would vary from one area to another depending upon the extent to which the value of land used or held for residential, commercial or industrial purposes exceeded the value of land used for agricultural purposes.

In the *Knowlton* case, *supra*, the Wisconsin court rejected an argument very similar to that here advanced by the Commission to the effect that the power to grant a complete exemption included the power to grant a partial exemption, saying (9 Wis., at 424) that "we think this argument must fail; for the very moment that the legislature say that a specific article or kind of property shall be taxed, or shall contribute at all towards the expense of government, from that very moment the first clause of. the section takes effect, and it must be taxed by the uniform rule."

We are not here dealing with exemptions up to specified monetary values of some kinds of properties or quantities of land, or other like exemptions. Some of the longest established and well recognized exemptions from taxation involve such limitations on the extent of the exemption granted, and nothing in this opinion is intended to challenge their validity. To avoid still further protraction of this opinion, suffice it to say that they have the sanction of history (Niles, *op. cit.*, p. 32; and cases above cited with regard to the power of the Legislature to grant full exemptions) and that limitations as to amount or quantity may find support in very practical considerations or in the purposes which underlie the Statute of Mortmain and its present equivalent or successor in our Constitution, Article 38 of the Declaration of Rights.

In an annotation in 111 A. L. R. at p. 1486, under the heading *Discrimination for purposes of property taxation between agricultural lands and other real property*, it is stated that: "While there is some conflict among the authorities, a majority of the cases from jurisdictions whose constitutions

require taxes to be uniform hold that a classification of land for the purpose of property taxation as agricultural and otherwise results in an unconstitutional discrimination." Such was the view taken by the Supreme Court of New Hampshire in In re *Opinion of the Justices,* 76 N. H. 609, 85 A. 757. As the result of a constitutional amendment subsequently adopted which permitted special tax treatment for reforested land the New Hampshire court was of the opinion that a properly drawn statute granting such treatment would be valid. In re *Opinion of the Justices,* 99 N. H. 532, 114 A. 2d 327. The 1915 amendment of our Article 15 contains no provision as to land comparable to the New Hampshire constitutional amendment.

*Dickinson v. Porter,* 240 Ia. 393, 35 N. W. 2d 66, in which an able opinion was written by Justice Garfield, is a leading case in support of the validity of a partial tax exemption in favor of agricultural land, and it is heavily relied upon by the Commission. That case seems to be concerned primarily with the reasonableness of a separate classification of agricultural lands—a question which we do not reach in this opinion.

We hold that the Farm Assessment Act attempts to set up a separate classification of *land* for tax purposes, that in so doing it contravenes the limitations upon classification contained in the present Article 15 of the Declaration of Rights and hence is unconstitutional.

In view of this holding we find it unnecessary to consider the other questions raised in this case. The record before us does not raise any claim for reduction of assessments based upon *Hillsborough v. Cromwell,* 326 U. S. 620, and *Sears, Roebuck & Co. v. State Tax Comm.,* 214 Md. 550, 136 A. 2d 567.

Since we agree with the learned trial judge that Sec. 19(b) is unconstitutional, the orders appealed from will be affirmed.

*Orders affirmed, with costs.*

HAMMOND, J., concurs in the result.

PRESCOTT, J., filed the following dissenting opinion:

In the previous majority opinion, it was assumed that the Legislature had the authority to grant partial exemptions from taxation of land; and it was held that the Act under attack was invalid as being discriminatory and not based upon public policy. The present majority opinion still holds the Act unconstitutional, but this time on the ground that the Legislature does not have the power to classify land in this State for tax purposes.

Having somewhat fully expressed my views in a previous dissent, I shall make one or two brief observations concerning the present majority opinion and re-file the former dissent.

The majority opinion points up some of the reasons for the dissent. It states: "Under these statutes [Baltimore City Annexation Statutes] and decisions [of this Court] there was in fact, as the Commission points out, partial exemption from taxation [of land] in the Annex for a period of about fifty years." During this period, there were many cases dealing with these partial exemptions decided by this Court. In none of them was it ever held that the partial exemptions were invalid. I think these decisions and the statutes referred to, over this long period of time, are sufficient to create a sound basis upon which to determine that our Constitution does permit the Legislature to classify land for the purposes of taxation. As I read the opinion, it, in effect, holds that for a period of fifty years, or more, there were unconstitutional statutes among the laws of this State, and this Court enforced them [although it is accurately stated in the majority opinion that the statutes were not directly and specifically brought under constitutional attack].

The majority opinion also recognizes, and apparently places its blessing, upon the other quite numerous partial exemptions of land statutes in this State.

Some of these exemptions of land from taxation [all named in Code (1957), Article 81, Section 9] are: the first 15 acres of nonprofit organizations used for war memorials or commemorative parks; the first 100 acres of certain fraternal, civil and benevolent institutions; the first 100 acres (outside of any city) of certain literary and educational organizations;

the first $6,000 of assessment of the land and dwelling of blind persons; the real property of any manufacturer [from county and local assessment for 10 years] employing more than 75 people, who locates in St. Mary's County; the real property of the Habonim Camp Association Company, Inc.; the real property of certain salvage corps and fire companies; the ground for the Boys' Village and Barrett School for Girls; the land of numerous veterans' associations, historical societies and hospitals. Needless to say, I am in entire accord with the part of the majority opinion that suggests these exemptions and partial exemptions are valid; but it is extremely difficult for me to comprehend why some partial exemptions of land are constitutional in this State, yet the present Act is held unconstitutional upon the ground that the Legislature has *no power to grant* partial exemptions.

With this short preface, the former dissent follows:

As I am unable to concur in the majority opinion and the subject involved is one of general interest throughout the State, I shall set forth the reasons which prevent my agreeing with it, as fully as the limited time available will permit.

The facts are fully and accurately stated by the majority; so, they will not be repeated here.

The majority assume, without deciding, that under the Maryland constitution, the legislature may reasonably classify real estate for the purposes of taxation, and, also, may grant partial exemptions from the payment of taxes on real estate, provided they be reasonable or serve a public purpose; consequently, I shall proceed upon the same premise, after making two short observations concerning the same. Chief Justice Cooley states: "The legislature has power to exempt from taxation any person, corporation, or *class of property* according to *its views of public policy or expediency,* provided always that no constitutional provisions are violated. [Citing, among many other cases, *William Wilkens Co. v. City of Baltimore,* 103 Md. 293, 63 A. 562.] The right to make exemptions is involved in the right to select the subjects of taxation and *apportion the public burdens among them,* and must consequently be understood to exist in the law-making power wherever it has not in terms been taken away." (Emphasis

added.) *2 Cooley Taxation* (4th Ed.), Section 659. See also Niles, *Maryland Constitutional Law, 32*. And it should be noted that the quotation in the majority opinion from 111 A.L.R. 1486 to the effect that in a majority of the cases from jurisdictions whose constitutions *require taxes to be uniform* hold that a classification of land for the purpose of property taxation "as agricultural *and otherwise*" (italics added) results in an unconstitutional discrimination is not cited as authority for holding that the partial exemption involved in the instant case is "unreasonable and serves no public purpose." The note seems to deal principally with cases where the questions raised were whether or not, under the state constitutions being considered, there could be any classification or exemptions made [questions, which for the purposes of the case at bar, have been assumed].

Starting upon the assumptions made by the majority, I proceed to a discussion of that portion of the statute [hereafter referred to as "the act" or "the statute"] here under attack. The act provides that "Lands which are actively devoted to farm or agricultural use shall be assessed on the basis of such use, and shall not be assessed as if sub-divided or on any other basis." The classification of property for tax purposes on the basis of *use* is entirely proper and has been recognized for so many years that little citation of authority is necessary to support this phase of the matter. *Grossfield .v. Baughman,* 148 Md. 330, 336, 129 A. 370. In fact, most of the exemptions granted in Code (1957), Article 81, Section 9, are based upon the use to which the property is put.

It is, also, well settled "that the legislature may, without contravening either the Federal or State Constitution, exempt certain species of property from taxation, *when it does not amount to an arbitrary discrimination;* * * * and * * * it may exempt certain classes of persons or corporations from the payment of taxes upon certain species of property where the *discrimination is founded upon public policy or a reasonable distinction, and does not amount to an arbitrary discrimination."* (Italics added.) *Mayor & C. C. v. German A. F. I. Co.,* 132 Md. 380, 386. The majority, however, have concluded that whatever discrimination would result from

the act is not founded "upon public policy" *or* a "reasonable distinction."

It is difficult for me to conceive of how a statute that affects so vital a part of this state's economy as its agricultural industries, embracing its dairy farms, beef cattle raising, nurseries and general farming enterprises, etc., can be divorced from the State's public interest and "public policy." There can be little doubt that this act does not affect small isolated spots in the State, but quite a number of the whole areas of different counties where the actual value of the land is so high that, if assessed at its full value, it cannot sensibly and profitably be utilized for agricultural purposes. It is a matter of general knowledge that there are many places in the State where farmers, who have tilled their soil for many years and who, either by choice or because of disqualifications for other vocations, desire to continue to do so. They sell their produce in nearby markets and have been able to make reasonable returns for their labors and upon the investments involved. The march of time goes on and they find themselves engulfed, either because of nearby housing developments, business enterprises or country estates, in a situation where, if their land be assessed at its actual value, they can no longer farm their land and obtain a reasonable return. In many cases, it is the farmer's home, and has been, for many years. His only recourse is to sell and retire, if he can do so or desires to do so, or to leave his home and go to a more remote location to continue his farming activities.

As the situation now stands, the housing developer has a distinct advantage over the agriculturist. If the developer can purchase and develop land near a farm and then the farm is assessed as of the value of subdivision property, the farmer is required to sell or operate at a loss or so small a gain that it does not pay him to continue.

The disruptive effect of these forced sales upon the farmer, his family and the public is apparent. There is an immediate dislocation not only of the farmer and his family, but also upon the laboring force formerly employed, with its resulting problems of unemployment, etc., and the land itself is withdrawn from the production of the necessities of life.

And the above is only, more or less, an illustration. In the large agricultural areas of this State, where the problems of the housing developments have not arisen but the value of land (which can be utilized for country estates, water-front property, etc.) has increased and the problems of the high cost of labor, fertilizer and machinery and the low price of their produce confronts the farmer, again shows, in my opinion, that the statute is reasonable and based upon a sound public policy of encouraging agriculture. There are many other apt illustrations that could be made, but I shall not labor the factual situation much further.

Of course, there are instances where some speculators would benefit from the statute, but the statement that seldom, if ever, does any tax fall uniformly and equally in all respects, upon every taxpayer, which is apposite here, has become so trite in the text-books and cases, no citation of authority to support the same will be made.

I turn now to the law with reference to whether the statute under consideration is "reasonable" and based upon "public policy." All presumptions are strongly in favor of the constitutionality of a statute, which should not be held invalid unless it is clear, plain and palpable that such decision is required. *Allied Stores of Ohio v. Bowers* (1958), 358 U. S. 522. If there be a reasonable doubt as to validity, the act should be upheld. *Hellmann v. Collier,* 217 Md. 93, 141 A. 2d 908; *Leonardo v. Board of County Commissioners,* 214 Md. 287, 299, 134 A. 2d 284; *Pressman v. State Tax Commission,* 204 Md. 78, 94, 102 A. 2d 821.

In *Dickinson v. Porter,* 35 N. W. 2d 66 (Iowa, 1948), (Appeal dismissed 338 U. S. 843), referred to (but not followed) by the majority as the leading case that upholds the partial exemption of agricultural lands, the Supreme Court of Iowa went thoroughly into the subject and carefully treated and analyzed the constitutional questions involved, including those of "reasonableness" and "public policy." That Court has expressed my views so thoroughly upon the law that I shall conclude by simply quoting therefrom:

> "Both in her petition and in argument here plaintiff's complaint is that the statute conflicts with the

above constitutional provisions in that the classifications in the law are unreasonable and arbitrary.

\* \* \*

"The statute amounts to a legislative finding there are sufficient differences between property to which the act applies and other property to justify the classification. We will not interfere unless plaintiff has proven the classification does not rest on a reasonable basis but is essentially arbitrary and palpably discriminating.

"It is well recognized the legislature has a wide discretion in determining classifications to which its acts shall apply. \* \* \* In tax matters even more than in other fields legislatures possess the greatest freedom in classification. *Madden v. Kentucky,* 309 U. S. 83, \* \* \* It is not sufficient that the court may regard the reason for the classification a poor one. 16 C.J.S., Constitutional Law, § 520, page 1049; 1 Cooley on Taxation, 4th Ed., § 334, page 714. The differences upon which the classification is based need not be great or conspicuous. 1 Cooley, 4th Ed., § 334, page 714, and citations.

\* \* \*

"We consider first the classification of lands used for agricultural purposes. We are not convinced our legislature may not separately classify such lands for taxation for school purposes. Nor have we ever held such a classification invalid.

"The purpose for which property is kept or used has long been a recognized, if not a favorite, basis for distinction in taxation. \* \* \*

"It is true of course there are common characteristics between agricultural land and other realty in the matter of taxation for school purposes. But we cannot say there are not characteristics which differentiate it from other realty in relation to school taxes. We are not convinced the legislature could not with reason conclude that agricultural land derives less benefit, in enhanced value or otherwise,

from the money raised by school taxes than other real estate. City or town residence property or real estate used for business purposes may well be affected by our school system in quite a different way than land used for agricultural purposes which consists of comparatively large tracts. The legislature could reasonably have concluded that agricultural lands are taxed excessively for school purposes as compared with property devoted to other uses and that such taxes should be equalized in accordance with benefits received.

"Very likely other reasons occurred to the legislature why a distinction should be made between agricultural lands and other realty. We have indicated enough to justify our unwillingness to hold there is no possible rational basis for such classification."

After an exhaustive review of the cases sustaining similar exemptions, the Court took up the question of public purpose. It said:

"The classification of lands used for agricultural purposes may be upheld not only upon the considerations expressed * * * [above] but also as in furtherance of a public policy to aid or encourage agriculture. As stated, the burden rests on plaintiff to negative every conceivable basis upon which this statute may be upheld.

"A classification is not arbitrary which rests upon some reason of public policy. * * * 1 Cooley, 4th Ed., section 334, page 713; Id., section 335, page 719, where it is said, 'Public policy may also warrant a particular classification.'

"As stated in *Watson v. State Comptroller*, 254 U. S. 122, 124, 125, 41 S. Ct. 43, 44, 65 L. Ed. 170, 175: 'Any classification is permissible which has a reasonable relation to some permitted end of governmental action. * * * It is enough, for instance, if the classification is reasonably founded in "the purposes and policy of taxation." * * *'

"The power of state legislatures to adjust their tax laws in order to encourage an industry or undertaking deemed vital to the welfare of the state or in furtherance of some related principle of public policy has frequently been upheld.

* * *

"Our state constitution makes no attempt to define what is a public purpose nor have the courts adopted any inflexible definition. *Carroll v. City of Cedar Falls*, 221 Iowa 277, 283, 261 N. W. 652. See also 61 C. J., Taxation, sections 20, 21. Plaintiff concedes 'what constitutes a public purpose, as distinguished from a private purpose, is sometimes difficult of determination.' Numerous decisions are to that effect. The term 'public purpose' is not to be construed narrowly. 1 Cooley, 4th Ed., section 175.

"Courts are extremely reluctant to hold a tax statute invalid on the ground a tax is laid, an exemption granted or an appropriation in connection therewith made, for a private purpose. *'It has been quite uniformly held by the courts that the determination of such questions inheres largely in the legislative power.* Within the zone of doubt that is . . . a public purpose, which the Legislature deems to be such.' * * *

* * *

"A law may serve the public interest although it benefits certain individuals or classes more than others. *Carman v. Hickman County, supra,* 185 Ky. 630, 215 S. W. 408, 411; *State v. Dammann, supra,* 228 Wis. 147, 277 N. W. 278, 280 N. W. 698, 707, and citations; 1 Cooley, 4th Ed., section 181, page 392.

"*Carmichael v. Southern Coal & Coke Co., supra,* 301 U. S. 495, 515 * * * states: '. . . whether the present expenditure serves a public purpose is a practical question addressed to the lawmaking department, *and it would require a plain case of departure from every public purpose which could reason-*

*ably be conceived to justify the intervention of a court.' "*

Finally, the Court said:

"As previously indicated, the legislative policy of this state throughout its history has been to grant numerous tax exemptions. Perhaps such policy is of doubtful wisdom. But of course the question here is one of legislative power, not wisdom.

\* \* \*

"If we were to follow the argument of plaintiff, many of these exemptions of long standing could not be upheld although apparently they have never been questioned.

"If there is no rational basis for applying a different rate or granting a partial exemption from school taxes upon agricultural land, how can the total exemption be upheld of all agricultural produce harvested by or for the taxpayer within the previous year. This exemption has stood since the Code of 1851 and removes from tax liability property of enormous value. \* \* \* Many other related questions might be asked.

"We conclude plaintiff has not demonstrated beyond a reasonable doubt the act in question violates, in the respects claimed, the constitutional provisions she has invoked." (Emphasis added.)

See also the following cases which have upheld tax statutes granting partial exemptions to rural or agricultural lands within city limits. *Daly v. Morgan,* 69 Md. 460, 16 A. 287; *Sindall v. City of Baltimore,* 93 Md. 526, 49 A. 645; *Sams v. Fisher,* 106 Md. 155, 66 A. 711; *Serrill v. Philadelphia,* 38 Pa. St. 355; *Brush v. Sixth Taxing Dist.,* 104 Conn. 192; *Land, Log & Lumber Co. v. Brown,* 73 Wisc. 294.

I think the statute grants a reasonable partial exemption from taxation to "lands which are actively devoted to farm or agricultural use," and that it is based upon "public policy"; consequently, it should be upheld as a valid and constitutional legislative enactment.