WHITE, Judge
(dissenting).
In recording my dissent I acknowledge the excellence of the majority opinion in stating the questions involved and expounding arguments advanced for and against reversal of the chancellor’s decree. My conclusion adverse to the majority view by no means suggests that the instant problem is one that lends itself to easy solution. I nevertheless am convinced that the solemn effect of this court’s judgment of reversal is to strike down a legislative act that is essentially clear in its provisions and, on analysis, clearly within the enacting power of the legislature.
Despite protests to the contrary, the majority interpretation of the act is composed squarely in constitutional perspective because there are constitutional aspects that cannot be avoided. What is the power of the legislature under the Florida Constitution with respect to the classification of property for tax assessment purposes ? Assuming the power to classify, is there anything in the “just” valuation requirement or in any other provision of the Constitution that .forbids the classification of taxable real property on the basis of bona fide use ? Did the legislature in enacting Section 193.-11(3) plainly prescribe such a use classification and, if so, is the classification fatally preferential? I feel that these vital questions are not correctly answered by the arguments for reversal.
The majority opinion, as I construe it, equates “full cash” value with the requirement of “just” value and then concludes that this is an absolute definitive that virtually rules out current use classification as a basic premise in determining just ad valorem tax assessments. I am unable to rationalize such a rule with the Florida Constitution as construed by any previous court decision, nor do I see any fundamental abuse of legislative power in the enactment of Section 193.11(3) which is quoted again for emphasis:
“ ‘All lands being used for agricultural purposes shall be assessed as agricultural lands upon an acreage basis, regardless of the fact that any or all of said lands are embraced in a plat of a subdivision or other real estate development. Provided, “agricultural purposes” shall include only lands being used in a bona fide farming, pasture or grove operation by the lessee or owner, or some person in their employ. Provided shed nurseries, or nurseries under cover, shall not be termed agricultural and shall be excluded from this law. Lands which have not been used for agricultural purposes prior to the effective date of this law shall be prima facie subject to assessment on the same basis as assessed for the previous year, and any demand for a reassessment of such lands for agricultural purposes shall be subject to the severest scrutiny of the county tax assessor to the end that the lands shall be classified properly.’ ” (Emphasis supplied.)
Granting arguendo the validity within limits of the just valuation formula enunciated by the majority opinion, it does not administer the death blow to Section 193.11(3) unless *378 the act is in fact fatally preferential or unreasonable in its classification or unless this kind of legislation is ultra vires the legislature.
The decree under review, with one possible qualification, broadly sustains Section 193.11(3) F.S.A., supra, by which section in conjunction with Section 193.11(1) the legislature has prescribed in essence that bona fide agricultural lands be assessed for taxation at full cash value as agricultural lands rather than as lots or for other potential uses such as residential or industrial. It seems to me that it takes a strained interpretation to perceive any other meaning. As previously indicated, I find no constitutional infirmity in this statute and no error in the basic interpretation by the chancellor.
The majority, while noting that under Florida Constitution Section I of Article IX the criterion is “just” valuation, apparently rejects the proposition that to such end the legislature may make classifications according to prevailing use and require assessments to be made on that basis. But why, or why not? We are not concerned here with the valuation of property such as money, negotiable paper or other intangibles commonly used at face value as the equivalent of cash in financial transactions. We are dealing with real property assessments; and if classification is at all permissible, the current use factor provides the only practical ground for any classification whatsoever. For if a current use classification is beyond the power of the legislature to prescribe, some other potential use may become the controlling criterion if the assessor, through conjecture or otherwise, conceives that such potential use is the proper gauge for ascertaining present value for just assessment purposes. Thus, according to the import of the majority view, the power of classification is nugatory and has no excuse for being.
Legislative power should not be foreclosed on such reasoning. The authority of the legislature to make realistic classifications for tax assessment was judicially recognized as far back as Levy v. Smith, 1851, 4 Fla. 154, under the Territorial Constitution of 1838 which became Florida’s first State Constitution in 1845. This authority has not been abrogated by our present Constitution nor seriously questioned in any interpretative decision of the Florida Supreme Court. See infra this writer’s analysis of the recent case of Franks, Tax Assessor, v. Davis, decided by the Florida Supreme Court, 145 So.2d 228, and cited in the majority opinion.
Section 1 of Article IX of the Constitution charges the legislature with the duty to prescribe “such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law * * (Emphasis supplied). It is true that “County Assessors of Taxes” are Constitutional officers, but Section 6 of Article VIII which established these offices also provides that “their powers, duties and compensation shall be prescribed by law.” (Emphasis supplied.) In considering said Section 6 of Article VIII in conjunction with Section 1 of Article IX, it is apparent that the authority to regulate the clerical and discretionary functions of tax assessors reposes basically in the legislature; and the asses-, sor has no authority to determine just valuation contrary to legislative declaration.[1] In other words, it is the province of the legislature to prescribe rules for just valuation and it is the duty of the assessor to ascertain the legislative intent and follow it, absent court adjudication to the contrary; nor may the courts substitute their own concepts of just valuation contrary to legislative determination. The legislature, however, must not abuse its authority in derogation of some other provision of the Constitution.
*379 Repeating the questions: Is the legislative intent in § 193.11(3) in relation to § 193.11(1) clearly expressed; and does the intent, as expressed, transgress any constitutional barrier? I would answer the first of these questions in the affirmative and the latter in the negative as, in substance, did the chancellor. Accordingly I would uphold his decree, including his ruling on the question raised on cross-appeal. The chancellor held that the assessor could consider the highest and best use of plaintiffs’ land as agricultural land. The assessor’s discretion would, of course, be exercised within the defined classification of agricultural land.
I have previously mentioned the case of Franks, Tax Assessor v. Davis decided by the Supreme Court of Florida, 145 So.2d 228. That decision would seem to be of little persuasion here because of material factual distinctions. There the act of the legislature had fixed the assessed value of stock in trade at the arbitrary figure of 25% of its invoice value for tax purposes. The court held that this amounted to abusive tampering with the rate of taxation contrary to the requirement of uniformity and equality. The latter requirement, of course, pertains to rate and not assessment. On the other hand, the legislature here made a realistic classification and within that classification there remains the requirement of assessment at full cash value. The Franks decision contains an illuminating commentary by Justice Thornal in his dissenting opinion in which he defines legislative prerogatives I have attempted to emphasize.
Assessed valuations of land based on estimates of its highest and best potential, as distinguished from present bona fide use, are bound to he largely conjectural; and when an assessor, contrary to legislative intent and direction, determines that land despite its present use has a truly higher present value because of its potential for some other “higher” purpose, he indulges in unwarranted speculation and does violence to the constitutional and statutory objective of just valuation. The assessor, like the courts, should operate within the record and not de hors it.
There are those, including some taxing authorities, who take a dim view of the agriculturist who stubbornly blocks an expanding urban development, for example, when he can obtain a higher price for his land for that purpose than it is reasonably worth for agricultural purposes. This invokes the “tax it loose” philosophy which would make government a coercive force directed against the owner’s asserted right to the lawful bona fide use and enjoyment of his land as he sees fit. This coercive force would be exerted by assessing the land on the basis of what it would be worth if used for the more “progressive” purpose. Under our system, however, government should not assume the role of a Moloch demanding such sacrifice in the name of progress.
The private version of progress should support itself. When government needs private property for public use, it may be taken under eminent domain for just compensation upon showing the need; but when agricultural land is desired by private interests to provide housing or service accommodations for people in growing areas, progress must outbid the owner who desires to remain on his land or wishes to continue thereon his agricultural pursuits.
This is not a matter to be controlled altogether by the vagaries of the world of commerce with its clashes of private interests and proclivities of investors and speculators to make better use of the other fellow’s property. It is a matter of taxation between the state and the taxpayer to obtain revenue for governmental purposes. Surely valuation for that purpose may be viewed by the state, if the legislature so provides, from the subjective standpoint of the taxpayer in relation to the chosen utility of his land.
The language of Section 193.11(3), according to my interpretation, supplements but does not cancel out the “full cash value” *380 provision of preceding Section 193.11(1). In this context no unlawful preferential treatment is accorded the agriculturist in comparison with the realistic treatment universally accorded other classes of property owners, even though the legislature apparently deemed it unnecessary to particularize other classes. The realistic approach in making ad valorem assessments is, after all, the traditional and practical approach. A dwelling house and its vicinage is not assessed as though it were the site of an industrial plant or a high rise cooperative apartment building. An established factory is not assessed according to its potential as a grove or a stock farm, even though adjacent owners of the latter may be ready and willing to take over at some fancy price.
Let us pursue further the argument on reason and principle. Where in a given area there is a wave of successful land speculation, say for single family dwellings, an adjacent tract of agricultural land may have a relative “market value” far in excess of its present use value. Must this agriculturist, who perhaps resides on the premises or has spent years developing it as a cherished project, suffer it to be valued as though it were about to be developed into a subdivision? To hold that such extrinsic value would be just value for tax purposes is to proceed on the specious assumption that all land is for sale or should be sold on a fair offer of its value for another supposedly “higher” purpose. The land, particularly in view of the statute, should remain and be valued in its present use classification unless and until it passes into another class, in which event it should be assessed accordingly at its full cash value.The usual variables such as location and quality may, of course, be taken into account.
The important public policy aspect of this case is well indicated in the dissenting opinion by Judge. Prescott of the Maryland Court of Appeals in State Tax Commission v. Wakefield, 1960, 222 Md. 543, 161 A. 2d 676, 688, a case cited and quoted in this-court’s majority opinion. Judge Prescott said: *381 division property, the farmer is required to sell or operate at a loss or so small a gain that it does not pay him to continue.
*380 “It is difficult for me to conceive of how a statute that affects so vital a part of this state’s economy as its agricultural industries, embracing its dairy farms, beef cattle raising, nurseries and general farming enterprises, etc., can be divorced from the State’s public interest and 'public policy.’ There can be little doubt that this act does not affect small isolated spots in the State, but quite a number of the whole areas of different counties where the actual value of the land is so high that, if assessed at its full value, it cannot sensibly and profitably be utilized for agricultural purposes. It is a matter of general knowledge that there are many places in the State where farmers, who have tilled their soil for many years and who, either by choice or because of disqualifications for other vocations, desire to continue to do so. They sell their produce in nearby markets and have been able to make reasonable returns for their labors and upon the investments involved. The march of time goes on and they find themselves engulfed, either because of nearby housing developments, business enterprises or country estates, in a situation where, if their land be assessed at its actual value, they can no longer farm their land and obtain a reasonable return. In many cases, it is the farmer’s home, and has been, for many years. His only recourse is to sell and retire, if he can do so or desires to do so, or to leave his home and go to a more remote location to continue his farming activities.
“As the situation now stands, the housing developer has a distinct advantage over the agriculturist. If the developer can purchase and develop land near a farm and then the farm is assessed as of the value of sub-
*381 “The disruptive effect of these forced sales upon the farmer, his family and the public is apparent. There is an immediate dislocation not only of the farmer and his family, but also upon the laboring force formerly employed, with its resulting problems of unemployment, etc., and the land itself is withdrawn from the production of the necessities of life.”’

. State ex rel. Atlantic Coast Line R. Co. v. State Board of Equalizers, 1922, 84 Fla. 592, 94 So. 681. 682. 30 A.L.R. 362: Barr v. Watts, Fla.1953, 70 So.2d 347, 350-351.